*208
 
 POLITZ, Circuit Judge:
 

 This appeal requires an examination of the “insider” status contemplated by Section 101(25) of the Bankruptcy Code of ' 1978, 11 U.S.C. § 101(25) (1978), and the subordination of an insider’s claim pursuant to Section 510(c)(1) of the Code, 11 U.S.C. § 510(c)(1). We affirm the resolution of the insider status issue and remand for further consideration and entry of findings on the subordination issue.
 

 Facts
 

 Land Wall, president, controller and director of Missionary Baptist Foundation of America, Inc. (MBFA), a religious non-profit corporation, filed a petition for reorganization of that corporation and its seven wholly-owned subsidiaries, together considered as one entity, under Chapter 11 of the Bankruptcy Code. The debtor’s schedules included two promissory notes which are the subject of this appeal. These notes represent obligations of the debtor to Robert G. Huffman, claimant herein, and result from several transactions involving (1) Huffman, (2) Wall, (3) their partnership known as Wall and Huffman, (4) West Texas Home Health Care, Inc. (West Texas Homes), a nursing home management corporation owned by Huffman and Wall, and (5) one or more of MBFA’s subsidiaries.
 
 [1]
 

 Huffman and Wall established both their partnership, Wall and Huffman, and their corporation, West Texas Homes, in 1975. The partnership purchased Dumas Convalescent Center, a nursing home in Dumas, Texas, borrowing $228,000 from a commercial lender to cover the downpayment and the costs of needed improvements. Huffman had no personal exposure on this loan. Shortly thereafter the partnership contracted with West Texas Homes for the operation of the facility. Wall handled the financial details; Huffman was involved exclusively in management.
 

 In early 1977, Wall individually purchased the Crestview Home in Throckmorton, Texas. He entered into a management contract with West Texas Homes identical to that covering the Dumas home. On February 1, 1977, Wall transferred his interest in Crestview to Pampas Enterprises, a partnership composed of himself and three family members. That same day Pampas subleased the property to West Texas Homes.
 

 Crestview and Dumas were sold to MBFA in April 1977. Under the terms of this package sale, MBFA assumed all indebtedness encumbering the properties and agreed to pay $148,014 for the equity. Huffman and Wall, individually, each received a promissory note for $74,007, secured by a second lien on the Dumas property. Through this
 
 en globo
 
 transaction Huffman shared equally with Wall in the equity in Crestview, despite the former’s apparent lack of a proprietary interest therein.
 

 Contemporaneously with the sale of the Dumas and Crestview homes, West Texas Homes assigned its contractual rights in both homes to MBFA receiving therefor two unsecured promissory notes, each in the amount of $88,860. West Texas Homes was subsequently dissolved and in the distribution of its assets, its shareholders, Huffman and Wall, each received one of the $88,860 notes.
 

 Through August of 1980, MBFA made periodic payments to Huffman on the $74,-007 and $88,860 notes. When the petition in bankruptcy was filed, MBFA’s books reflected a balance of $37,170.96 owed Huffman on the $74,007 note. Although the corporate books did not evidence the $88,-860 note, MBFA’s representatives acknowledged the existence of a debt in this amount to West Texas Homes. The debt-
 
 *209
 
 or’s schedules reflected an aggregate balance on the two notes in favor of Huffman of $119,005.
 

 The trustee formally objected to Huffman’s claim, contending that MBFA was not indebted to him on the $88,860 note nor for the $37,170.96 balance, because the $74,-007 note was invalid as the product of an arrangement by Huffman and Wall designed to improperly extract monies from the debtor. The bankruptcy court found,
 
 inter alia,
 
 that Wall's ownership or control of the debtor placed him within the definition of “insider of the debtor,” 11 U.S.C. § 101(25)(B). Recognizing that Huffman’s connection with MBFA differed from Wall’s, the bankruptcy court then addressed the question whether Huffman could be characterized as an insider because of his business relationship with Wall and his stock ownership in West Texas Homes.
 

 The bankruptcy judge found that MBFA’s acquisition of the Dumas and Crestview homes and West Texas Homes’ contractual position were effected by Wall on a less than arms-length basis. The judge concluded that because West Texas Homes was an affiliate of the debtor under 11 U.S.C. § 101(2)(B), its conveyance of the $88,860 note to Huffman was an insider transaction. Further, the judge determined that the $74,007 indebtedness to Huffman, in his capacity as general partner of a partnership which controlled the debtor, likewise resulted from an insider transaction.
 

 Based on these findings, the bankruptcy judge allowed the $119,005 claim but ordered it subordinated, under 11 U.S.C. § 510(c)(1), to those of' the general unsecured creditors. The district court affirmed the bankruptcy court in all respects, concluding that there had been sufficient findings to justify the subordination of Huffman’s claim under the three-pronged test we enunciated in
 
 Matter of Mobile Steel Co.,
 
 563 F.2d 692 (5th Cir.1977).
 

 On appeal, Huffman contends that the bankruptcy court erred in imputing insider status to him because of MBFA’s association with West Texas Homes and the Wall and Huffman partnership. He further contends that there were insufficient findings to support the application of the equitable subordination doctrine outlined in
 
 Matter of Mobile Steel Co.
 
 We disagree with the first contention and agree with the second.
 

 Standard of Review
 

 Findings of fact made in a bankruptcy proceeding will not be set aside unless clearly erroneous.
 
 See Northern Pipeline Construction Co. v. Marathon Pipeline Co.,
 
 - U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982);
 
 In re Reed,
 
 700 F.2d 986 (5th Cir.1983). A finding of fact is clearly erroneous “when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.”
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Strict application of the clearly erroneous rule is particularly important where, as here, the district court has affirmed the bankruptcy judge’s findings.
 
 In re Garfinkle,
 
 672 F.2d 1340 (11th Cir.1982)
 
 (citing DeMet
 
 v.
 
 Harralson,
 
 399 F.2d 35 (5th Cir.1968)). This rigorous standard does not constrain appellate scrutiny of conclusions of law, which are subject to plenary review.
 
 In re Bubble Up Delaware, Inc.,
 
 684 F.2d 1259 (9th Cir.1982);
 
 Matter of Multiponics, Inc.,
 
 622 F.2d 709 (5th Cir.1980).
 
 See Pullman-Standard
 
 v.
 
 Swint,
 
 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). When a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule.
 
 Smith v. Hightower,
 
 693 F.2d 359 (5th Cir.1982).
 

 Huffman as an Insider
 

 The district court considered the determination by the bankruptcy court that Huffman was an insider to be a finding of fact which was not shown to be clearly erroneous. Huffman argues that we should make an independent analysis of the finding and, regardless of the standard applied, find that there is insufficient evidence to establish his insider status on either of the subject notes.
 
 *210
 
 We perceive the insider determination to be a question of fact.
 

 According to the legislative history, an insider under 11 U.S.C. § 101(25) is an entity or person with “a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debt- or.” S.Rep. No. 95-989, 95th Cong., 2d Sess.,
 
 reprinted in
 
 [1978] U.S.Code Cong. & AdmimNews, pp. 5787, 5810.
 
 See
 
 Phillips,
 
 Insider Provisions of the New Bankruptcy Code,
 
 55 ArmBank L.J. 363 (1981). If the debtor is a corporation, its insiders may include any officer, director, controlling person, partnership in which the debtor is a general partner, general partner of the debtor, or relative of a general partner, director, officer, or controlling person. § 101(25)(B).
 

 Use of the word “includes” in § 101(25) evidences Congress’ expansive view of the scope of the insider class, suggesting that the statutory definition is not limiting and must be flexibly applied on a case-by-case basis. S.Rep. No. 95-989, 95th Cong., 2d Sess.,
 
 reprinted in
 
 [1978] U.S.Code Cong. & AdmimNews, p. 5812; Note, The Term “Insider” Within § 547(b)(4)(B) of the Bankruptcy Code, 57 Notre Dame Law. 730 (1982).
 
 See
 
 2 L. King, Collier on Bankruptcy ¶ 101.25 (15th ed. 1983).
 
 See also Matter of Montanino,
 
 15 B.R. 307 (D.N.J.Bkrtcy. 1981).
 

 Encompassed within the insider concept are entities or persons who can be classified as affiliates of the debtor or insiders of an affiliate, § 101(25)(E), both groups being presumed to have a close relationship with the debtor. S.Rep. No. 95-989, 95th Cong., 2d Sess.,
 
 reprinted in
 
 [1978] U.S.Code Cong. & AdmimNews, p. 5807; H.Rep. No. 95-595, 95th Cong., 2d Sess.,
 
 reprinted in
 
 [1978] U.S.Code Cong. & Admin.News, p. 6265; Phillips,
 
 Insider Provisions,
 
 55 Am. Bank.L.J. at 363. Section 101(2) provides:
 

 “affiliate” means—
 

 (A)entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
 

 (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
 

 (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
 

 (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
 

 (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
 

 (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
 

 (C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or
 

 (D) entity that operates the business or all or substantially all of the property of the debtor under a lease or operating agreement;
 

 By using the word “means” rather than “includes,” Congress enacted a precise and restricted definition. 2 L. King, Collier on Bankruptcy ¶ 101.00[2]; Note, The Term “Insider,” 57 Notre Dame Law. at 733 n. 52. As explained in the Senate Report, the phrase “directly or indirectly” envisions “situations in which there is an opportunity to control, and where the existence of that opportunity operates as an indirect control.” S.Rep. No. 95-989, 95th Cong., 2d Sess.,
 
 reprinted in
 
 [1978] U.S.Code Cong. & Admin.News, p. 5807.
 

 After finding that West Texas’ assignment of the $88,860 note was an insider transaction, the bankruptcy court held that West Texas Homes, a corporation 20 per
 
 *211
 
 cent or more of whose outstanding voting securities were owned by Wall, was an affiliate within the intendment of § 101(2)(B). Having determined that Wall was an alter ego
 
 [2]
 
 of the debtor, the bankruptcy court concluded that MBFA could thus be deemed to own or control 50 percent of West Texas Homes’ stock. Huffman does not challenge the legal identification of Wall with the debtor for purposes of this action, but assigns error in the judge’s reference to evidence offered in other proceedings and at other times in this reorganization case in arriving at the finding.
 

 A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom. See
 
 Kinnett Dairies, Inc.
 
 v.
 
 Farrow,
 
 580 F.2d 1260 (5th Cir.1978);
 
 State of Florida Board of Trustees
 
 v.
 
 Charley Toppino & Sons, Inc.,
 
 514 F.2d 700 (5th Cir.1975). Here, the bankruptcy court referred to the record developed in the same case, albeit in different proceedings. Although we intend no blanket approval of this action, we cannot gainsay the bankruptcy court’s “right to take notice of its own files and records and [the absence of] any duty [on its part] to grind the same corn a second time.”
 
 Aloe Creme Labs. v. Francine Co.,
 
 425 F.2d 1295, 1296 (5th Cir.1970). Both parties were aware that the principal issue was whether Wall’s predetermined role as an insider of the debtor could be imputed to Huffman. The case was thus presented. Huffman had ample opportunity to submit evidence on this issue.
 

 We are persuaded that as to the $88,860 note, Huffman was an insider of an affiliate within the meaning of 11 U.S.C. § 101(2). By definition, an insider of an affiliate is an insider of the debtor under 11 U.S.C. § 101(25)(E). In light of the interrelationship of all transactions, this finding of Huffman’s insider status with respect to the $88,860 note is dispositive as to the $74,007 note, inasmuch as the components of Huffman’s claim are not sufficiently discrete to warrant separate treatment.
 

 Equitable Subordination
 

 Upon finding that Huffman played an insider’s role in the pertinent transactions with the debtor, the bankruptcy court subordinated his $119,005 claim pursuant to § 510(c), assigning no specific reasons therefor. Huffman asserts that the trustee failed to establish an adequate evidentiary basis for equitable subordination.
 

 Section 510(c)
 
 [3]
 
 permits the bankruptcy court, in the exercise of its equitable jurisdiction, to apply pre-Code principles of equitable subordination. 3 Collier on Bankrupt
 
 *212
 
 cy ¶ 510.04. The courts have recognized three general categories of conduct considered sufficient to warrant equitable subordination: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant’s use of the debtor as a mere instrumentality or alter ego. See Cohn, Subordinated Claims: Their Classification and Voting Under Chapter 11 of the Bankruptcy Code, 56 Am.Bank.L.J. 295 (1982); Note, Deep Rock in the Deep South — Equitable Subordination of Claims in Fifth Circuit Bankruptcy Proceedings, 11 Cumb.L.Rev. 619 (1980).
 

 We adopted a triad test for the equitable subordination of claims in bankruptcy in
 
 Matter of Mobile Steel Co.:
 

 (i)The claimant must have engaged in some type of inequitable conduct,
 

 (ii)The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
 

 (iii)Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].
 

 563 F.2d at 700 (citations omitted).
 
 Accord, Matter of Multiponics, Inc.
 

 A claim filed pursuant to § 501 enjoys prima facie validity which may be overcome by the trustee’s presentation of evidence. A claim arising out of dealings between a debtor and its fiduciaries is to be rigorously scrutinized by the courts,
 
 Matter of Multiponics; Matter of Mobile Steel Co.,
 
 but mere proof of a fiduciary relationship is insufficient to invalidate a transaction. To sustain an objection, the trustee must overcome the presumption of validity which attaches to all properly filed claims. Upon the trustee’s submission of sufficient evidence to overcome the prima facie showing, the claimant is obliged to prove his good faith and fairness in the dealings. It is at this juncture that the fiduciary’s claim is subject to the probing light of judicial inquiry. We observed in
 
 Multiponics
 
 that “[t]his proof allocation provides a proper balance of burdens, assuring that the trustee does not underprove his objections while, at the same time, assuring that the fiduciary need not overprove his good faith and fairness at the mere cry of inequity by the trustee.” 622 F.2d at 714.
 

 Notwithstanding the bankruptcy judge’s failure to assign reasons, the district court discerned sufficient findings of fact corresponding to each of Mobile’s three components to justify the order of subordination. Specifically, the district court stated that the following findings by the bankruptcy judge were supported by the evidence and fulfilled the requirements of our articulation of the equitable subordination doctrine: (1) Huffman and Wall engaged in inequitable conduct in 1977 in the context of MBFA’s acquisition of the Dumas and Crestview Homes and West Texas Homes’ contractual rights therein; (2) these transactions conferred an unfair advantage on both Huffman and Wall; and (3) the subordination of Huffman’s claim was consistent with the Bankruptcy Code.
 

 These findings, though perhaps inherent in the bankruptcy court’s ruling, were not enunciated. Though we agree that Huffman’s insider connection with the debtor compels close examination of his claim, we cannot conclude, in the absence of explicit findings by the bankruptcy court on each element of the
 
 Mobile
 
 test, that the trustee has discharged his burden of proof thereunder. Whether or not Huffman’s insider status,
 
 [4]
 
 coupled with his receipt of the fruits of Wall’s manipulations, is tantamount to the
 
 *213
 
 unfairness, bad faith or unconscionable wielding of control for personal gain envisioned by
 
 Mobile
 
 and
 
 Multiponics
 
 is problematical, in light of our holding that “an objection on equitable grounds cannot be merely formal, but rather must contain some substantial factual basis to support its allegation of impropriety.”
 
 Matter of Mobile Steel Co.,
 
 563 F.2d at 701.
 

 Under the totality of the circumstances of this case, therefore, we are persuaded that a remand to the bankruptcy court for entry of the findings required for application of this circuit’s equitable subordination test is necessary. On remand, the bankruptcy court should set forth its relevant findings and conclusions under each element of the test we impressed in
 
 Matter of Mobile Steel Co.
 

 AFFIRMED in part, REVERSED and REMANDED for further proceedings.
 

 [1]
 

 . The record reflects that four MBFA subsidiaries, all known as Associated Memorial Homes, were involved in the relevant transactions with Huffman, Wall, the Wall and Huffman partnership, and West Texas Homes. It is not clear which of the four, Associated Memorial Homes of West Texas, Inc., Associated Memorial Homes of Central Texas, Inc., Associated Memorial Homes of Lubbock, Inc., and Associated Memorial Homes of Greenbelt, Inc. became indebted to Huffman. To facilitate discussion we shall simply refer to the obligor on the Huffman promissory notes as “MBFA” or “the debtor.”
 

 [2]
 

 . The bankruptcy judge stated:
 

 The divers proceedings to date in this Chapter 11 case have demonstrated time and again that Wall met practically every test that could be devised for the existence of “insider” status. He manipulated and controlled the parent corporation and the subsidiaries. He dealt with those entities as his
 
 alter ego.
 
 He transferred monies and assets between the entities with impunity. Although the nonprofit debtor corporation had no voting securities, Wall controlled the corporate activities with an iron hand. In summary, Wall was an “insider.” * * * * * %
 

 Wall’s dealings with his puppet corporation, MBFA, were exemplified by the transactions which gave rise to the instant litigation when he caused his personal real estate, the partnership real estate, and the management contracts of the corporation, West Texas Home Health Care, Inc., to be transferred and assigned to MBFA for amounts in excess of $325,000.00.
 

 From these findings, it reasonably can be inferred that Wall breached his fiduciary duty to the debtor and its various subsidiaries by collectively utilizing the corporate entities as a conduit for the funneling of monies and assets for his own personal gain.
 
 See Matter of Multiponics, Inc. See also
 
 Cowan on Bankruptcy § 16.7 (1983 Interim Supp.).
 

 [3]
 

 . Section 510(c)(1) authorizes a court, after notice and a hearing, to “subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest....” Under the Code, the phrase, “after notice and a hearing,” refers to “after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.... ” 11 U.S.C. § 102(1)(A). A hearing is not mandated in all circumstances.
 

 [4]
 

 . Collier takes the position that “[t]he fact that the claimant is an insider of the insolvent corporation within the meaning of section 101(25) of the Code does not necessarily mandate that the claimant must be subordinated to the claims of other creditors. Unless there is a finding of inequitable conduct beyond the mere relationship between the claimant and the insolvent debtor, subordination cannot stand nor will it be authorized.” 3 Collier on Bankruptcy, ¶ 510.04 at 510.14-15 (footnote omitted). One court has required a showing not only of a fiduciary’s ability and intent to control the debtor, but the actual exertion of such control to the detriment of other creditors, before that fiduciary’s legitimate claim may be subordinated. In re
 
 Branding Iron Steak House,
 
 536 F.2d 299 (9th Cir.1976) (applying the Bankruptcy Act of 1898).