In the Matter of ANTOINE'S INDUSTRIES, INC., Debtor.

Harold SAULET and Bobbie Saulet, Claimants,

v.

Mendel SMALL, trustee in bankruptcy, Respondent.

Bankruptcy No. 80–03986–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 3, 1984.

Harold Saulet, pro se.

Scott J. Goldstein, Spencer, Fane, Britt & Browne, Kansas City, Mo., for respondent.

Mendel Small, Kansas City, Mo., trustee.

---

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING OBJECTION TO ALLOWANCE OF CLAIMANTS' CLAIM AND FOR ITS SUBORDINATION TO OTHER CLAIMS

DENNIS J. STEWART, Bankruptcy Judge.

The claimants filed their claim on May 12, 1982, for a total of $25,000.00 based upon a "working capital loan" allegedly made by them to the debtor corporation on August 1, 1980. On October 5, 1983, the respondent trustee in bankruptcy filed his objection to allowance of the claim, stating that "the working capital loan of $25,000.00 in reality is capital stock and should be subordinated to the other claims." The matter of the objection to the claim was heard by the court on October 31, 1983, whereupon the claimant Harold Saulet appeared personally and without counsel and the respondent appeared by Scott J. Goldstein, Esquire, his counsel.

The respondent's counsel then requested that the court take judicial notice of the files and records in this case as follows: that the within bankruptcy proceedings were commenced on December 4, 1980; that, prior to that time, the claimant Harold Saulet was president and had control of the debtor in the years 1979 and 1980; that he was trustee for a trust which held all of the debtor's stock for the benefit of his wife, the claimant Bobbie Saulet; that the debtor corporation was incorporated in 1969 but did not begin its auto parts business until April 9, 1980; that the loan in question was made on February 1, 1980, and a promissory note evidenced the loan, containing a due date of August 1, 1980, but no provision for the payment of any interest; that the original capital contribution to the debtor corporation was a little over $8,000.00; that, in the years 1979 and 1980, the debtor

corporation obtained over $200,000 in loans from sources other than Harold and Bobbie Saulet [1]; that the loan in question, according to Mr. Saulet's testimony, was made because the increased debt being incurred by the debtor in late 1979 and early 1980 when it changed its business direction caused it to be unstable; and that, as Mr. Saulet testified, the debtor corporation was insolvent at the time of the extension of the $25,000 to it and was not in need of capital investments.

Under the provisions of section 510(c) of the Bankruptcy Code, "the court may ... under principles of equitable subordination, subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." It is the trustee's contention, under this section, that, as a capital contribution, the $25,000 extension by claimants to the debtor should be subordinated to all other claims.

Section 510(c), *supra*, "is intended to codify case law, such as *Pepper v. Litton*, 308 U.S. 295 [60 S.Ct. 238, 84 L.Ed. 281] (1939) and *Taylor v. Standard Gas and Electric Co.*, 306 U.S. 307 [306 U.S. 618, 59 S.Ct. 543, 83 L.Ed. 669] (1938)." H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 359, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6315. Those two decisions set down the general rule that the bankruptcy court, in exercising the power of subordination, should exercise it so as to prevent unfairness or injustice, especially when the claimant is an officer, director or stockholder of the debtor corporation. "(I)n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate. And its duty to do so is especially clear when the claim seeking allowance accrues to the ben-

---

**1.** The sources, dates and amounts of those loans are as follows:

Merchants Bank, $156,000.00—December 4, 1979

Merchants Bank, $60,000.00—January 25, 1980

Merchants Bank, $20,000.00—June 16, 1980; Prospect Business Development Corporation —$78,000.00—December 4, 1979.

efit of an officer, director or stockholder." *Pepper v. Litton, supra,* 308 U.S. at 307–308, 60 S.Ct. at 245–246. Consequently, it was held that such claimants cannot use their corporate officers for their own advantage and to impair the rights of other creditors and, when they do so, subordination is proper. The holding of the Supreme Court in *Taylor v. Standard Gas & Electric Co., supra,* is essentially to the same effect.[2] "To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor." 124 Cong.Rec. H 11,095 (Sep. 28, 1978). "The courts have recognized three general categories of conduct considered sufficient to warrant equitable subordination: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 212 (5th Cir.1983). It is undercapitalization which the trustee has selected in this case as the basis for equitable subordination. It is the trustee who bears the burden of proving a prima facie case of such. "A claim filed pursuant to section 501 enjoys prima facie validity which may be overcome by the trustee's presentation of evidence. A claim arising out of dealings between a debtor and its fiduciaries is to be rigorously scrutinized by the courts ... but mere proof of a fiduciary relationship is insufficient to invalidate a transaction. To sustain an objection, the trustee must overcome the presumption of validity which attaches to all properly filed claims. Upon the trustee's submission of sufficient evidence to overcome the prima facie showing, the claimant is obliged to prove his good faith and fair-

ness in the dealings." *Id.* It has been said that the amount of capitalization which is adequate is

"what reasonably prudent men with a general background knowledge of the particular type of business and its hazards would determine was reasonable capitalization in the light of any special circumstances which existed at the time incorporation of the now defunct enterprise."

*Matter of Mobile Steel Co.,* 563 F.2d 692, 703 (5th Cir.1977), quoting from N. Lattin, The Law of Corporations sections 15, 17 (1971). Further, it is said that

"(1) Capitalization is inadequate if, in the opinion of a skilled financial analyst, it would definitely be insufficient to support a business of the size and nature of the bankrupt in light of the circumstances existing at the time the bankrupt was capitalized;

"(2) Capitalization is inadequate if, at the time when the advances were made, the bankrupt could not have borrowed a similar amount of money from an informed outside source."

In the record before the court, there is little evidence which would meet either test or which would otherwise indicate to the court that the claim should be subordinated under equitable principles. There is virtually no evidence which informs the court of the type or scope of business which was contemplated at the time of capitalization. The claimant's testimony is to the effect that capitalization as of that time was sufficient; that there was, in addition to that capital, a considerable quantity of "retained earnings" which was available; and that, these monies combined were more than sufficient for the enterprises contemplated.[3] The bare numbers, in this context, do not suffice to make a prima facie case of undercapitalization. Further, the financial

---

2. "Deep Rock finds itself bankrupt not only because of the enormous sums it owes Standard but because of the abuses in management due to the paramount interest of interlocking officers and directors in the preservation of Standard's position, as at once proprietor and creditor of Deep Rock." 59 S.Ct. at 550. Accordingly, it

was held improper to subordinate the claims of preferred stockholders to that of Standard.

3. Mr. Saulet testified without contradiction that there was as much as $130–$140,000 in "retained earnings" in the debtor corporation.

status at the time the particular loan in question was made is not disclosed by the evidence, apart from the testimony of Mr. Saulet, which is uncontradicted, to the effect that the corporation was insolvent. Further, according to the evidence presented by the trustee, other banks and lending institutions were loaning the debtor money in close proximity to the time of the loan in question.[4] It does not therefore, without more, appear that an informed lender would not have loaned the debtor money at this time. The court could not so conclude without more detailed evidence of the financial condition of the debtor corporation as of this date. Nor is there any evidence of a "disproportionately high share of debt funding" which the authorities hold to constitute a form of undercapitalization warranting relief under section 510(c), *supra.* See 3 Collier on Bankruptcy para. 510.05, p. 510–16 (1984). On the basis of the record before the court, therefore, the objection of the trustee seeking subordination of the claimants' claim cannot be granted. This court is in agreement with the principle that, "(a)s to the conduct of fiduciaries, special scrutiny must be given their dealings with the debtor." *Matter of Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir. 1980). This rule especially applies in respect of officer loans to debtor corporations because, if they are really not loans but capital contributions to undercapitalized corporations, the essential unfairness of allowing the claim and not subordinating it is double: "not only did the claimant increase the risks of failure by undercapitalizing it, the claimant also seeks to share in the distribution of the debtor's assets based on purported loans to the debtor which were substitutes for risk capital. If these 'loans' had been invested in the proper form, they would not have been grouped, in the order of distribution, on a parity with the claims of the general creditors." 3 Collier on Bankruptcy para. 510.-05, p. 510–16 (1984). But, nevertheless, the decisional authority warns against an allocation of burden of proof which would per-

mit the trustee "to underprove his objections." *Matter of Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir.1980). Accordingly, despite the potential for abuse in a matter such as that at bar, this court can, on the basis of the record before it, and after due and careful consideration, only conclude that the trustee has not demonstrated a sufficient basis for his objection. It is therefore hereby

ORDERED that the objection of the trustee to allowance of the claimant's claim in the sum of $25,000 and for its subordination be, and it is hereby, denied.