In re HIDEAWAY BEACH, INC., a Florida corporation, Debtor.

In re HIDEAWAY DEVELOPMENT CORPORATION, f/k/a Royal Marco Corporation, a Florida corporation, Debtor.

In re HIDEAWAY BEACH, LTD., a Florida limited partnership, Debtor.

NATIONAL TRUST COMPANY, as Co-Trustee, Plaintiff,

v.

HIDEAWAY BEACH, INC. and Hideaway Development Corporation, Defendants.

Bankruptcy Nos. 84–02188–BKC–SMW to 84–02190–BKC–SMW. Adv. No. 85–1023–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 5, 1985.

John W. Kozyak, Kozyak, Tropin & Throckmorton, P.A., Miami, Fla., for plaintiff, Nat. Trust Co.

William M. Manker, Miami, Fla., and Daniel C. Cohn, Fine & Ambrogne, Boston, Mass., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon Plaintiff's Complaint for Equitable Subordination and the Court having heard the testimony and examined all trial exhibits, having observed the candor and demeanor of the witnesses, having considered the argument of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Facts and Conclusions of Law.

This Court has jurisdiction over the parties and the subject matter.

Plaintiff, National Trust Company ("National Trust"), is a Florida corporation with its principal place of business in Naples, Florida. Pursuant to an Agreement Appointing Co-Trustee, between National Trust and Arthur V. Woodward, Trustee, National Trust is authorized to represent the beneficiaries of a trust corpus consisting of a limited partnership interest in Hideaway Beach, Ltd., a Florida limited partnership. Defendant, Hideaway Development Corporation ("Hideaway Development") is a Florida corporation, which was incorporated to serve as the general partner of Hideaway Beach, Ltd. Defendant, Hideaway Beach, Inc., a Florida corporation, is the parent of Hideaway Development. Both Defendants and Hideaway

Beach, Ltd. filed voluntary petitions under Chapter 11 of the Bankruptcy Code on November 16, 1984.

Defendant, Hideaway Beach, Inc. is the wholly-owned subsidiary of Dev-Pro, Inc., a Florida corporation, which is, in turn, wholly owned by J.M. King Investment, Ltd., an Ontario corporation. Mr. Raymond Smela, a Canadian attorney and land developer, is the sole shareholder of J.M. King Investments, Ltd. and the Chairman of the Board of both defendants.

This proceeding presents the issue of whether, under the facts presented, the claims and interests of the Defendants asserted against Hideaway Beach, Ltd. should be equitably subordinated to the extent of the initial capital contribution of $400,000, made by Arthur V. Woodward, Trustee, when the limited partnership was formed. This Court concludes that National Trust is entitled to prevail.

Prior to the filing of the three voluntary Chapter 11 petitions, the Debtors were engaged in the business of developing and marketing real estate on Marco Island, Florida. In 1979, Hideaway Beach, Inc. purchased 211 acres of undeveloped property, which was then zoned agriculture, for approximately $10 million. A number of the single-family home sites had been pre-sold and re-zoning was a condition of the purchase, so that these pre-sales could be consummated by the purchaser. Shortly thereafter, Hideaway Beach, Inc. was successful in having its property rezoned as a Planned Unit Development (PUD). The PUD zoning permitted Hideaway Beach, Inc. to develop and sell 263 single family residential lots, plus 360 multi-family units, and provided that the developer, Hideaway Beach, Inc., would construct certain amenities, including a beach club, a golf course, a tennis court, a recreation building, and racquetball courts. It was contemplated that the multi-family units would be built on a portion of the 211 acre parcel referred to as the "golf course site." Hideaway Beach, Inc., has sold all but approximately 20 of single family home sites. There is no, or little, remaining equity in the 211 acres parcel.

In early 1980, Mr. Smela contracted with the Deltona Corporation to purchase a contiguous 90 acre parcel, known as Royal Marco Point, of which 46 acres were then developable as single family home sites. On March 26, 1980, Mr. Smela formed Hideaway Beach, Ltd. for the purchase from Deltona. The partnership originally consisted of the general partner, and five limited partners, each of which contributed $400,000. At that time Hideaway Development, was formed and contributed no more than $500.00. None of the other entities controlled by Mr. Smela made any other cash contributions to the limited partnership. The Royal Marco Point property was purchased, at a premium, with approximately $1.2 million in cash and a purchase money mortgage of approximately $3.6 million. Title to the property was taken in the name of the general partner, but the Defendants acknowledge that the Royal Marco Point is beneficially owned by the limited partnership.

After the purchase of Royal Marco Point, Hideaway Beach, Inc. submitted a new PUD to the county for approval. The revised PUD allowed 263 residential lots, as provided in the original PUD, and permitted an additional 34 multi-family units, for a total of 394 multi-family units, which could be developed on the combined property then owned by Hideaway Beach, Inc. and the Royal Marco Point parcel.

The Schedules and Statements of Affairs filed by the three debtors are confusing and misleading as a result of double or triple reporting of the Royal Marco Point property or alleged interests therein. According to the schedules, the debtors had combined assets in excess of $74 million and less than $16 million in combined liabilities. These same schedules, and other evidence, establish that the golf course site remains owned by Hideaway Beach, Inc. and that there is no equity in this parcel. The schedules also reflect that Hideaway Beach, Inc. loaned $2 million to Hideaway Beach, Ltd. No other intra-estate obli-

gations are reflected in the schedules and neither defendant filed a proof of claim in the Hideaway Beach, Ltd. estate.

The Plaintiff has commenced this action for equitable subordination under 11 U.S.C. § 510(c)(1), which provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

Equitable subordination is an equitable doctrine, to be fashioned by Bankruptcy Courts. The *Matter of Mobile Steel Co.* case established that a three-prong test must be satisfied before the Court may equitably subordinate a claim or interest. This test provides:

(i) the claimant must have committed fraud or other inequitable conduct; ·

(ii) the claimant's conduct must have resulted in harm to the other creditors or in an unfair advantage to the claimant;

(iii) the subordination of the claims will not be contrary to other principles of bankruptcy law.

*Benjamin v. Diamond (In the Matter of Mobile Steel Company),* 563 F.2d 692, 700 (5th Cir.1977).

The Defendants and their chairman, Mr. Smela, are "insiders" as defined by 11 U.S.C. § 101(28) and are fiduciaries as discussed in *Matter of Mobile Steel Co., supra. See also, Wilson v. Huffman (In the Matter of Missionary Baptist Foundation of America, Inc.),* 712 F.2d 206, 210–211 (5th Cir.1983). They are certainly not strangers to this case and have, in fact, controlled the entire Hideaway Beach project, at each step of the way. As the Fifth Circuit in *Matter of Mobile Steel Co., supra* recognized, in citing *Pepper v. Litton,* 308 U.S. 295, 304, 306, 60 S.Ct. 238, 244, 245, 84 L.Ed. 281 (1939), the dealings of fiduciaries in equitable subordination actions:

are subjected to rigorous scrutiny and where any of their contracts or engagements is challenged, the burden is on the director or stockholder not only to prove the good faith of the transaction, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.

*See Matter of Missionary Baptist Foundation, Inc. supra* at 212; *Machinery Rental, Inc. v. Herpel (In the Matter of Multiponics, Inc.),* 622 F.2d 709, 714 (5th Cir.1980).

This complaint was filed after the debtors filed their Second Amendment to Consolidated Disclosure Statement, which indicated that there was no equity in Hideaway Beach, Ltd. Due to the Defendants' status as insiders and their recent contention, that the limited partnership has no equity, due to obligations owing to them, the Court must carefully scrutinize and examine the Defendants' position with a "large dose of watchful ware;" *Washburn v. Green,* 133 U.S. 30, 10 S.Ct. 280, 33 L.Ed. 516 (1890). *See Matter of Missionary Baptist Foundation, Inc., supra,* at 212; *Matter of Multiponics, Inc., supra* at 714.

Plaintiff introduced sufficient evidence to establish a prima facie case that the Defendants breached their fiduciary responsibilities to the Plaintiff, and thus acted inequitably, by attempting to obligate the partnership for $13 million to Hideaway Beach, Inc. without proper consideration or prior sufficient disclosure; by attempting to obligate Hideaway Beach, Ltd. for $2 million in "loans," from Hideaway Beach, Ltd., including substantial amounts of interest without any agreement or prior, sufficient disclosure; by attempting to assign the liabilities connected with the golf course site to Hideaway Beach, Ltd. and by assessing Hideaway Beach, Ltd. for expenses, which related to Hideaway Beach, Inc.'s property.

In *Matter of Missionary Baptist Foundation, Inc., supra,* where insiders had filed claims, which were presumed to be valid, the Court held that once the Trustee had submitted sufficient evidence to over-

come a prima facie showing, the burden was upon the claimants to establish their good faith and fairness in dealings and that it is "at this juncture that the fiduciary's claim is subject to the probing light of judicial inquiry." *Id.* at 212. This Court concludes that the Defendants' actions fail to withstand the necessary judicial inquiry.

11 U.S.C. § 521 requires debtors to file a schedule of assets and liabilities, which are presumed to be correct. This is a basic duty and the Defendants have not attempted to amend their schedules to conform to the Defendants' contention that Hideaway Beach, Ltd., has no equity as a result of the obligations that Hideaway Beach, Inc. now asserts were agreed to in 1980.

The Defendants also failed to satisfactorily explain the "$2 million loan" to Hideaway Beach, Inc. which they admitted includes a substantial amount of interest, although not based upon any written agreement. Furthermore, this loan is supposedly a result of advances made, without notice to or the consent of the Plaintiff, and includes marketing expenses relating to the effort to develop the golf course site, owned by one of the Defendants.

The Defendants' treatment of the golf course site is inexplicable. It was purchased in 1979 by Hideaway Beach, Inc. and is reflected in this Debtor's schedules as property owned by Hideaway Beach, Inc., and having a value of $2.2 million. The same schedules reflect a secured claim encumbering this parcel in the disputed amount of $3,866,123. This parcel is not reflected in Hideaway Beach, Ltd.'s schedules, yet the Defendants contend that the limited partnership is obligated to pay a proportionate share of the $13 million obligation, relating to the zoning rights and access to amenities, as well as the mortgage encumbering the golf course site. The Court finds that there was no valid transfer of the golf course site, with its substantial liabilities, to the limited partnership.

At Mr. Smela's direction, agreements were drafted subsequent to the purchase of Royal Marco Point, to document the $13 million obligation Hideaway Beach, Inc. contends is owing to it as a result of the transfer of zoning rights to Hideaway Beach, Ltd. and permitting access to the amenities. These draft agreements were never executed, nor disclosed to the Plaintiff. Mr. Smela's explained that the documents were not finalized or executed, because he "forgot." Mr. Smela, on behalf of the Defendants, admitted during the trial that the draft agreements have no legal effect and this Court agrees.

The Defendants relied heavily upon an "Estimate" or pro forma, prepared by their financial officer, in 1980. This Estimate contains a disclaimer, "This statement is prepared for management purposes only" and then goes on to project that each limited partner would receive a 110% return per annum if the Royal Marco Point property was zoned for multi-unit housing, and an annual return of 46% per annum, if the property was marketed as single family sites. Plaintiff has not received any distribution from the limited partnership.

The aforesaid Estimate contains references to "costs," which include $20,000 per unit for "condominium zoning" and $15,000 per unit for "amenity costs." The Defendants' argument that Hideaway Beach, Ltd. is obligated to pay Hideaway Beach, Inc. approximately $13 million before the limited partners get any distribution, is based upon an assessment of these costs against the multi-family units provided for under the revised PUD.

Mr. Woodward denied ever seeing the "Estimate" before the trial commenced and denied that he, as Trustee, ever agreed that Hideaway Beach, Inc. would receive $13 million for condominium zoning and amenity costs, before the Plaintiff would receive any distribution. The Court finds that no agreement existed between Hideaway Beach, Inc. and Hideaway Beach Ltd. or Plaintiff to obligate the partnership to pay the $13 million obligation.

The Defendants admit that it cost "nowhere near" $1 million to have the PUD revised to include the Royal Marco Point property and further admitted that Hidea-

way Beach, Inc. would have had to construct the amenities, provided under the original PUD, even if the PUD had not been revised. Furthermore, Mr. David Bennett, the Defendants' chief financial officer, testified that some of the costs involved in this re-zoning or amendment to the PUD were paid for out of contributions initially made by the limited partners.

There was a dispute over what documents and information was provided to Mr. Woodward, Trustee, who had also performed some legal work for Mr. Smela and his companies and had served as an officer of various Smela-controlled corporations. Among other documents, Mr. Woodward denied receiving a June 30, 1981 letter with the 1980 tax return and financial statement. These documents did not reflect the $13 million obligation or any loans from Hideaway Beach, Inc. to the partnership. Although the partnerships' tax returns, for subsequent years, do reflect the obligations, Mr. Woodward also denied receiving them and there was no showing that these returns were served personally or by certified mail, as the Partnership Agreement required for notices to limited partners.

Under the *Matter of Mobile Steel Co.* case, *supra,* an insider must not only prove the good faith of a transaction but must also show its inherent fairness. *Id.* at 701. The Court concludes that the defendants failed to meet this burden. Mr. Smela and the Defendants contend $15,000 per unit is owed by the partnership for amenity costs. The Defendants' own expert witness testified at trial that the value of the amenity package to the development of Royal Marco Point was worth between $2,500–$5,000 per unit, as opposed to the $15,000 per unit cost described in the Estimate, which Defendants assert is a binding obligation of the partnership. In addition, there was no dispute that Hideaway Beach, Inc. had to construct the amenities under the original PUD covering the 211 acres parcel purchased by Hideaway Beach, Inc., which was purchased for $10 million and has already generated far more in revenues to this Defendant. When Mr. Smela was questioned about the amount Hideaway Beach, Inc. asserts is due under the "Estimates," as opposed to the much lower value placed on the amenities by the Defendants' expert appraiser, his response fell short of meeting the burden that the transaction was inherently fair.

Q. You heard your own expert say that was outrageous, didn't you?

A. That may be the case, but that is the deal I structured with my partners when we entered into the transaction.

Q. Did you tell them that is the deal that you struck?

A. They saw it. It was written on the papers. There it is.

Q. Did they know you were going to get the money?

A. What difference does it make who got it.

■ This Court finds that Hideaway Beach, Inc. and Hideaway Development Corp., through their chairman, Mr. Smela, owed the limited partnership a duty to disclose details, including costs and values, where the Defendants were to receive funds by dealing with the limited partnership. *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928). Rather than disclose the obligation Mr. Smela was attempting to impose upon the partnership, he admitted this change may have been outrageous and stated: "What difference does it make who got it?" This Court finds that lack of disclosure and unfairness makes a considerable difference in equitable subordination cases involving insiders.

Florida's limited partnership law clearly states that profits derived by a partner, without the consent of the other partners, must be held for the benefit of the partnership. Fla.Stat. § 620.66 (1983). There was no convincing testimony that either the Plaintiff, or the two other limited partners who testified, consented to this $13 million "debt," as a priority obligation, if the Royal Marco Point property was never successfully developed. Here, Hideaway Beach, Inc. had to build the amenities anyway,

none of the multi-family units have been successfully developed, and the Plaintiff, which contributed a significant portion of the money needed to purchase the Royal Marco Point, has received no distribution from the partnership.

Loans from an insider are subjected to closer scrutiny and this Court finds that the loans or advances to Hideaway Beach, Ltd. were inadequately disclosed to the limited partners, and included marketing costs relating to the attempted development of the golf course site.

■ This Court finds that the claims that Hideaway Beach, Inc. and Hideaway Development assert against Hideaway Beach, Ltd. are barred due to the Defendants' failure to schedule these obligations and the failure to file timely proofs of claims. This Court entered three separate orders on November 27, 1984, which set March 16, 1985 as the bar date for filing proofs of claims. These orders provide:

Any creditor holding a listed claim, which is not listed as disputed, contingent, or unliquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed … and who desire to participate in the case or share in any distribution must file their proofs of claims on or before the last day fixed for filing a proof of claim.

■ The Defendants did not timely assert the $13 million obligation. Related debtors, controlled by a lawyer, and represented by bankruptcy counsel, are not relieved from compliance with this Court's bar dates.

This Court will not permit the insiders, who have breached their fiduciary obligations and have failed to meet their burden that the transactions were inherently fair, to benefit from their actions. To rule otherwise would confer an entirely unfair advantage upon the Defendants and their chairman, Mr. Smela.

A judgment will be entered in accordance with the findings and conclusions.