In re UVAS FARMING CORPORATION, a New Mexico Corporation, Debtor.

UVAS FARMING CORPORATION, Plaintiff,

v.

LAVIANA INVESTMENTS, N.V., Defendant.

Bankruptcy No. 11–87–01667 R L. Adv. No. 88–0008 R.

United States Bankruptcy Court, D. New Mexico.

Aug. 8, 1988.

Ella J. Fenoglio, Albuquerque, N.M., for UVAS Farming Corp.

William Davis, Albuquerque, N.M., for Laviana Investments.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

In this adversary proceeding, the plaintiff, a debtor in possession, seeks to set aside an alleged preferential transfer consisting of a mortgage granted to creditor-shareholders of the debtor.

After several pre-trial conferences, the only issue remaining is the insider status of the defendant. The Court wishes to commend the attorneys for their excellent and professional presentation of the facts and argument of the law.

Since the filing of the petition, it has become apparent from the pleadings, proceedings, and testimony that underlying the reorganization of the debtor is a struggle for control of the corporation between two shareholder groups. Each group has filed a disclosure statement and plan of reorganization. By Court order, the plans will be brought on for simultaneous confirmation.

## FACTS

The parties have stipulated to the facts, and the Court makes the following ultimate findings:

The plaintiff, UVAS Farming Corporation, is engaged in the winemaking and grape growing business near Deming, New Mexico. In the early 1980's, the Vuignier family of Geneva, Switzerland began its project to establish a winery in the United States. In late 1982, a 460 acre tract of land was purchased and a winery building was then completed in June of 1984. Experiencing a need for additional funding, the Vuignier's, in 1984 and 1985, sought and obtained new equity investors for UVAS. UVAS also borrowed from some some of its shareholders. UVAS began to suffer cash shortages in the spring of 1986 and ultimately filed a chapter 11 petition in August of 1987.

The defendant, Laviana Investments, N.V., is a Netherlands Antilles corporation formed in late 1984. Laviana is the assignee of the mortgage in question. The assignor of the mortgage is Lodico, S.A., a Swiss corporation formed in 1955 as an investment vehicle for the private Swiss bank, Lombard and Odier.

Pierre Bovet, Vito Liso, Ervalla, S.A. and the Vuignier family comprise the majority shareholders of UVAS. The minority shareholder group, at the time the mortgage was granted, was made up of Laviana, Lodico, Jean–Pierre Delaloye, a Swiss investment adviser, and four of his clients, the Swiss corporations Amarone Investments, N.V., Jaremko Investments, Vespara Trading Corporation and Lipovan Investments, N.V.

UVAS issued two types of common stock. Class A shares are granted ten votes per share, while Class B shares are granted one vote per share. The share ownership positions of the various parties are set out in Table I.

On June 30, 1985, Lodico loaned to UVAS $1.1 million at 12% per annum and due on June 30, 1986. Lodico, on August 15, 1985, then loaned an additional $400,000 with the same rate of interest and due date. No promissory notes were executed by UVAS until December 1985. The loans were not intended, by either party, to be shareholder loans.

The financial condition of UVAS began to worsen. On September 12, and 19, 1986, special meetings of the shareholders were held. All minority shareholders were represented at the meetings by the law firm of Behles & Davis. Mr. Behles, under power of attorney from each minority shareholder, could vote and sign any required minutes. At the September 19 meeting, Mr. Behles succeeded in having UVAS grant to Lodico a mortgage to secure the two promissory notes. The mortgage was recorded the same day. It covers real property of UVAS, known as parcel number 2, which contains the winery building. The petition was filed August 10, 1987.

At a February 28, 1986 meeting of shareholders, all five then current members of the board of directors of UVAS were re-elected. The shareholders then attempted to elect a new board member, Jean–Pierre Delaloye. However, the bylaws of UVAS limited the board to five members. The Delaloye election was invalid as it violated the bylaws. The shareholders recognized the error and at the September 19, 1986 meeting, and after the mortgage was granted, amended the bylaws and elected Delaloye to the board.

After the mortgage was granted and after the petition was filed, Delaloye and his clients Amarone, Jaremko, Vespara and Lipovan bought up all the claims and shares of Laviana and Locido. By a complex assignment agreement of August 17, 1987, Laviana owns the mortgage. The minority shareholder group is now controlled by Delaloye.

The plaintiff contends that the September 19, 1986 mortgage, granted within one year of the petition, is a preference. After several pre-trial conferences, the parties submitted briefs and stipulations of fact upon the one remaining issue: Was Lodico an insider of UVAS, as defined in 11 U.S.C. § 101(30)(B) and (E), for the purposes of the one year preference period of 11 U.S.C. § 547(b)(4)(B), at the time of the granting of the mortgage?

## DISCUSSION

### A. Lodico Acting Alone

Under the definitions set out in 11 U.S.C. § 101(30)(B), certain entities are specifically designated as insiders of the debtor. This is an empirical standard, and the result can be ascertained on an examination of the facts. Lodico, by itself, as the stipulated facts show, fits none of these. Lodico and its principals were never officers or directors of UVAS. Nor was Lodico an insider under subparts (iv), (v) and (vi) of the subsection, (relating to partnership interests and relatives). Lodico could only have been an insider as a person in control of the debtor under § 101(30)(B)(iii) or an affiliate under § 101(30)(E).

### B. Lodico Acting with Others

As a preliminary to control and affiliate analysis, the Court notes that the statutory use of the words "insider includes" suggests that the definition of insider in the Code is not exclusive, but can be applied flexibly as each case warrants. An insider is one with a close enough relationship with the debtor so that his conduct must be given close scrutiny. *In re of Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 210 (5th Cir.1983). Lodico's role as a shareholder and creditor, and specifically its concerted actions with the minority shareholders, must be examined in detail for purposes of insider analysis.

The Lodico mortgage, out of context, is not an insider transaction. But Lodico did not act alone or exclusively to protect its own interests. All minority shareholders acted in concert through one firm of attorneys. At the September 1986 shareholder meetings, the Behles & Davis firm cannot have acted only for Lodico unless it served the interests of all minority shareholders. The Court naturally and properly must assume that Behles & Davis acted in the best interest of all of its clients in obtaining a mortgage for one of its clients. The Court therefore must view all the minority shareholders as one for the purpose of determining Lodico's affiliate status and its degree and nature of control over the debtor. The Court further believes that the post-petition consolidation of the minority shares and claims in the Delaloye group is relevant. It shows a continuing pattern of concerted action on the part of the minority shareholders. For this additional reason, Lodico must be grouped with all the minority shareholders for insider determination.

#### 1. Affiliate

An affiliate, under 11 U.S.C. § 101(2)(A), is an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor ..." This too is an empirical standard, but

the plain words of the Code dissolve into ambiguity when applied to the peculiar facts of this case. Here the shares of stock held by the parties carry different voting rights.

If the relative voting rights are ignored, and only the percentage of ownership of stock is considered, then the minority group, taken as a whole as the Court must, owns 34.2% of the debtor. These shares seem to fit the definition as "voting securities of the debtor," held "with power to vote ..."

However, when relative voting rights are considered, (10 votes per share of Type A, 1 vote per share of Type B) a different percentage is shown. The minority can only vote 13.5% of the stock. That is, the minority only owns 13.5% of the voting power.

Should Lodico and the minority be judged by the size of its ownership interest or the voting power of its interest? The case law does not provide a clear answer. Typical is *In re Wilmington Nursery Co., Inc.*, 36 B.R. 813 (Bankr.E.D.N.C.1984). The defendant shareholders in a preference action were found to own "at least thirty (30%) percent of the Debtor's voting stock." 38 B.R. at 814. Voting stock is not defined. As is typical in the cases, the defendant clearly owned more than 20% of the stock and there was no issue as to voting rights.

■ The legislative history offers more guidance. The statute says "means" rather than "includes". Congress thus gave affiliate a restricted and precise definition. *Missionary Baptist*, 712 F.2d at 210. Though the amount of ownership allowed is an arbitrary cut-off, that is the limit Congress set. The House Report, in discussing the "directly or indirectly" language of subparagraph (A), says that the provision is meant to cover "situations in which there is an opportunity to control." H.R.Rep. No. 595, 95 Cong., 2nd Sess. 308, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6265. Taking the Congressional concept of "opporunity to control," the Court holds that voting power is the appropriate measure of percentage of ownership for affiliate insider purposes.

Though Lodico and the other minority shareholders own 34.2% of the stock of the debtor, they have an "opportunity to control" with only 13.5% of the stock, their voting power. Lodico is not an affiliate of the debtor.

### 2. Control

■ The determination of insider status is a question of fact. The definitions in 11 U.S.C. § 101(30)(B) are flexible and must be found on a case-by-case basis. *Missionary Baptist*, 712 F.2d at 210. "Control", then, has no fixed definition, but is often defined by example and by an examination of the facts.

Courts have said that an insider is one whose relationship with the debtor must be given close scrutiny. The plaintiff would have the Court apply this standard literally. That is, since the Court must examine the transaction closely, then *ipso facto* there is an insider holding a preference. But close scrutiny is a vine that must bear fruit. It must show control. There must be found an opportunity to self-deal or exert more control than is available to other unsecured creditors.

Cited by the plaintiff is *In re Benson*, 57 B.R. 226 (Bankr.N.D.Ohio 1986). The case correctly states the legal proposition that the definitions in § 101(30)(B) are not exclusive, but that an insider can be any entity whose close relationship to the debtor requires careful scrutiny of the questioned transaction. However, the Court made no determination of insider status, based on the facts, as the only issue was a legal one of the exclusivity of the definitions in § 101(30)(B).

The other case cited by the plaintiff, *In re F & S Cent. Mfg. Corp.*, 53 B.R. 842 (Bankr.E.D.N.Y.1985), is more on point in that the Court was faced with determining the requisite amount of control needed for insider status. A creditor is in control of the debtor when it "does not deal at arms length with the debtor," but has "a special relationship with the debtor through which it can compel payment of its debt ..." 53 B.R. at 848. The special relationship here was a stock purchase agreement which

893

would have allowed the creditor to regain 100% control of the debtor had the debt not been paid. The creditor's ability to attain full legal control of the debtor made the creditor a 'control' person. In this case, Lodico and the minority had no opportunity to attain full legal control. They could only reduce an unsecured debt to judgment and attempt to foreclose a judicial lien.

The defendant's cases offer other examples of 'control'. The trustee, in *In re Schick Oil & Gas, Inc.*, 35 B.R. 282 (Bankr. W.D.Okla.1983), sought to avoid a preference in the form of a mortgage. The Court ruled that an inferior bargaining position, on the part of the debtor, was not enough to make the creditor a control person. Mere financial power is an incident of the debtor-creditor relationship and does not amount to control over the debtor. The transaction was questionable because the debtor had forwarded blank but signed mortgages to the bank for completion and filing at a later time. The Court found, though, that the debtor had properly authorized the bank's actions.

In another case, a lock box system was set up whereby the bank directly received payments due the debtors. As well, weekly meetings between the bank and the debtor were held to review the debtor's situation. These actions did not amount to a stranglehold over the debtor so that the debtor was powerless to act independent of the bank. The bank was found not to be an insider with control. *In re Belco, Inc.*, 38 B.R. 525 (Bankr.W.D.Okla.1984).

*In re Technology for Energy Corp.*, 56 B.R. 307 (Bankr.E.D.Tenn.1985), likens control to actual management of the debtor. Pressure to remove the debtor's chief executive officer, imposition of a consultant, a lock box arrangement and voting control for the purpose of accepting a purchase offer, all by the bank, did not raise the bank to the status of an insider. The Court found that the bank did not control the debtor's personnel or contract decisions, production schedules and accounts payable.

Finally, in *In re Huizar*, 71 B.R. 826 (Bankr.W.D.Tex.1987), a mere personal relationship between the loan officer and the debtor did not amount to insider status. An insider is one who has actual or unreasonable control of the debtor.

The facts of this case, as stipulated and as found by the Court, show that Lodico and the other minority shareholders participated in shareholder meetings and expressed opinions and concerns about the debtor. The minority shareholders had personal and business relationships with the debtor and the majority shareholders. The minority sought to keep itself informed of the debtor's business operations and financial condition. The minority negotiated for the current capital structure of the debtor. It tried and failed to put one of its own on the board. All of these actions do not amount to control. They were doing what any shareholder may properly, and perhaps should, do. No day to day control was practiced by the minority. They had no stranglehold over the debtor. The debtor was free to act independently. Any personal relationships exerted no control.

In the end, Lodico would always be outvoted by the majority. Lodico perhaps wanted control, but it failed to get it. Lodico's exercise of financial power to obtain the mortgage was only a normal incident of the debtor-creditor relationship. If Lodico had had control, it would have delayed the bankruptcy filing by one more month to eliminate the preference issue altogether. Lodico is not an entity in control of the debtor under 11 U.S.C. § 101(30)(B)(iii).

## CONCLUSION

In summary, Lodico is neither an affiliate of the debtor or an entity in control of the debtor. Laviana, the assignee of Lodico, therefore is not an insider. The mortgage is not preference and will not be set aside. This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law. Counsel for the defendant shall submit within ten days an appropriate form of judgment.

## TABLE I
### SHARE OWNERSHIP–UVAS FARMING CORPORATION

A. Percentage of ownership of stock, without considering voting rights:

| 1. Majority Shareholders | | 2. Minority Shareholders | |
|---|---|---|---|
| Owner, Number of Shares | | Owner, Number of Shares | |
| V. Vuignier | 9,600 | Lodico | 6,666 |
| N. Vuignier | 9,600 | Laviana | 2,561 |
| Pierre Bovet | 2,400 | Delaloye | 1,812 |
| Vito Liso | 2,400 | Amarone | 750 |
| Ervalla | 2,000 | Jaremko | 750 |
| | | Lipovan | 500 |
| Total | 26,000 | Vespara | 400 |
| 65.8% Ownership | | | |
| | | Total | 15,499 |
| | | 34.2% Ownership | |

B. Percentage ownership of stock, considering voting rights:

| 1. Majority Shareholders | | 2. Minority Shareholders | |
|---|---|---|---|
| Type A | | Type A | |
| Owner, Number of Shares | | Owner, Number of Shares | |
| V. Vuignier | 9,600 | Laviana | 1,345 |
| N. Vuignier | 9,600 | Delaloye | 1,345 |
| Pierre Bovet | 2,400 | | |
| Vito Liso | 2,400 | | 2,690 |
| | | 2690 × 10 votes = 26,900 votes | |
| | 24,000 | | |
| 24,000 × 10 votes = 240,000 votes | | | |
| Type B | | Type B | |
| Ervalla | 2,000 | Lodico | 6,666 |
| Shares and votes | | Laviana | 1,216 |
| | | Delaloye | 527 |
| | | Amarone | 750 |
| | | Jaremko | 750 |
| | | Lipovan | 500 |
| | | Vespara | 400 |
| | | Total shares and votes | 10,809 |
| TOTAL VOTES | 242,000 | TOTAL VOTES | 37,709 |
| PERCENTAGE OF VOTING POWER 86.5% | | PERCENTAGE OF VOTING POWER 13.5% | |