In re **TYEE TIMBERS, INC.,** Debtor.

**Eric R.T. ROOST, Trustee, Plaintiff,**

v.

**TIMBER COMPONENTS, INC., a Washington corporation, Defendant.**

**Bankruptcy No. 690–61848–R7. Adv. No. 90–6334–R.**

United States Bankruptcy Court, D. Oregon.

April 14, 1992.

Eric R.T. Roost, Eugene, Or., for plaintiff.

David B. Mills, Eugene, Or., for defendant.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court on the parties' cross motions for summary judgment.

## BACKGROUND

This adversary proceeding was brought by the plaintiff, the trustee, herein pursuant to 11 U.S.C. § 547, to recover alleged preferential transfers made by the debtor, to the defendant, more than 90 days but less than one year before the debtor filed its Chapter 7 petition.

A review of the court's file in this matter, including the pleadings, the parties' memoranda and other documents submitted in support of and in opposition to their respective motions, reveals the following undisputed facts.

The plaintiff is the duly qualified and acting trustee in this bankruptcy proceeding. The defendant is a Washington corporation. This court has already determined that this adversary proceeding is a core proceeding as defined in 28 U.S.C. § 157 (see scheduling order entered March 6, 1991).

The debtor filed its Chapter 7 petition herein on May 21, 1990. More than 90 days but less than one year before it filed its petition, the debtor made payments to the defendant in the aggregate sum of $36,257.91. The parties agree that these transfers were on account of an antecedent debt which the debtor owed to the defendant and that the payments enabled the defendant to receive more than it would have received if the transfers had not been made.

When the payments were made, Jerome Burley was the president of the defendant. In addition, he owned 200 shares of the outstanding preferred stock and 70 shares of the outstanding common stock of the debtor. The debtor's Amended Articles of Incorporation (in effect at the time of the payments) authorized it to issue 5,500 shares of stock; 500 shares of common, no par value, voting stock and 5,000 shares of $100 par value, non-voting, nine percent non-cumulative preferred stock.

The parties agree that four of the necessary elements of the plaintiff's prima facie case have been established; a transfer to a creditor (§ 547(b)(1)), for or on account of an antecedent debt (§ 547(b)(2)), which enabled the creditor to receive more than it would receive in a Chapter 7 liquidation (§ 547(b)(5)), and that occurred between 90 days and one year before the filing of the bankruptcy petition herein (§ 547(b)(4)(B)). The parties agree that there is a genuine issue of material fact concerning the solvency of the debtor at the time the transfers in question were made and that this question cannot be decided upon motions for summary judgment.

The parties, by their cross motions, seek a determination from the court as to whether or not the defendant was an insider of the debtor for the purpose of applying the extended preference period provided for in 11 U.S.C. § 547(b)(4)(B).

## ISSUE

The sole issue to be addressed by this opinion is whether or not the defendant was an insider of the debtor at the time it received the payments from the debtor as set forth above.

## DISCUSSION

All references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise noted.

The elements of a preferential transfer are set forth in § 547(b) which provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, *if such creditor at the time of such transfer was an insider;* and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. (emphasis added)

Since the payments in question were made between ninety days and one year before the date of the filing of the petition, the plaintiff must establish, that at the time the transfers were made, the defendant was an insider of the debtor. The plaintiff's argument can be summarized as follows:

1. Jerome Burley (Burley) is an affiliate of the debtor because he owns 20 percent or more of the "outstanding voting securities" of the debtor. § 101(2)(A).

2. Burley was an officer (the president) of the defendant, therefore he was an insider of the defendant. § 101(31)(A)(iv).

3. Consequently, the defendant is an insider of Burley. § 101(31)(A)(iv).

4. An insider (defendant) of an affiliate (Burley) of the debtor is an insider of the debtor. § 101(31)(E).

The defendant accepts the logic of the plaintiff's argument but rejects its key premise, that at the time of the payments Burley owned 20 percent or more of the *outstanding voting securities* of the debtor.

Burley owned shares in two classes of securities in the debtor; common stock and preferred stock. The plaintiff argues that only the common stock is "voting securities", the defendant argues that this court must consider both the common stock and preferred stock as "voting securities" for the purposes of § 101(2)(A). The importance of this distinction can best be illustrated by the following table:

| | No. of shares outstanding | No. of shares owned by Jerome Burley | % of shares owned by Jerome Burley |
|---|---|---|---|
| Preferred Stock | 1,920 | 200 | 10% |
| Common Stock | 330 | 70 | 21% |
| Total Combined | 2,250 | 270 | 12% |

This table makes it clear that if only the Common Stock is considered "voting securities" then Burley was an affiliate, otherwise he was not.

Section 101 provides in pertinent part as follows:

(2) "affiliate" means—

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding *voting securities* of the debtor, ... (emphasis added)

\* \* \* \* \* \*

(31) "insider" includes— ...

(B) if the debtor is a corporation— ...

(ii) officer of the debtor; ...

\* \* \* \* \* \*

(49) "security"—

(A) includes—

(i) note;

(ii) stock;

(iii) treasury stock;

(iv) bond;

(v) debenture;

(vi) collateral trust certificate;

(vii) pre-organization certificate or subscription;

(viii) transferable share;

(ix) voting-trust certificate;

(x) certificate of deposit;

(xi) certificate of deposit for security;

(xii) investment contract or certificate of interest or participation in a profit-sharing agreement or in an oil, gas, or mineral royalty or lease, if such contract or interest is required to be the subject of a registration statement filed with the Securities and Exchange Commission under the provisions of the Securities Act of 1933 (15 U.S.C. 77a et seq.), or is exempt under section 3(b) of such Act (15 U.S.C. 77c(b)) from the requirement to file such a statement;

(xiii) interest of a limited partner in a limited partnership;

(xiv) other claim or interest commonly known as "security"; and

(xv) certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a security; ...

Under Oregon law, each outstanding share of stock of a corporation is entitled to one vote unless the Articles of Incorporation provide otherwise:

> ... unless the Articles of Incorporation provide otherwise, each outstanding share, regardless of class, is entitled to one vote on each matter voted on at a shareholders meeting. Only shares are entitled to vote.

O.R.S. 60.227(1), in pertinent part.

Article 4 of the Amended Articles of Incorporation of the debtor provided as follows:

The aggregate number of shares of stock which this corporation shall have the authority to issue shall be five thousand, five hundred shares (5500). Five hundred (500) shares of stock shall be common, no par value, voting stock. Five thousand (5000) shares of stock shall be one hundred dollar ($100) par value, non-voting, nine percent (9%), non-cumulative preferred stock.

Reading O.R.S. 60.227(1) and Article 4 of the Amended Articles of Incorporation together it appears that the preferred stock owned by Burley had no voting rights.

The defendant argues, however, that this should not be the end of the inquiry. The defendant contends that since the term "security" is defined broadly by § 101(49), the term "voting" in "voting securities" in § 101(2)(A) must refer to *any* voting rights. Securities which have any voting rights (however slight) are voting securities within the meaning of § 101(2)(A). Under the Bylaws of the corporation and under Oregon law, the preferred stock owned by Burley did have some voting rights.

> The Bylaws of debtor provide in part: Article XIII—Corporate Borrowing. "No funds shall be borrowed by the corporation except upon approval of such borrowing by the owners of no less than 80% of all capital shares of corporate stock outstanding."
>
> Article II, Paragraph 9—Voting. "Each stockholder entitled to vote in accordance with the terms and provisions of the Certificate of Incorporation and these Bylaws shall be entitled to one vote ... for each share of stock entitled to vote held by such stockholders."

Based upon the Bylaws set forth above, the defendant argues that the preferred stockholders were entitled to vote. In Burley's affidavit, he maintains that, in fact, preferred stockholders did vote on matters involving corporate borrowing. Indeed, he indicates that he was out-voted in a matter concerning a purchase of certain real property referred to as the "Fugate property" from Scott Dunbar for $60,000. Burley indicates that he voted against this transaction however, the debtor's Board of Di-

rectors took the position that shareholders owning more than 80% of the capital stock had approved the transaction. *See* Affidavit of Jerome Burley, dated August 8, 1991, filed with Defendant's Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment on August 9, 1991. Accordingly, it is Burley's combined voting percentage which should be considered.

This court rejects the defendant's argument that the shareholders' interpretation of the voting rights or a provision of the debtor's Bylaws determines whether the preferred stock had voting rights.

The relevant Oregon statute, O.R.S. 57.-170(1)[1] provides that

> (1) Each outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders, except as otherwise provided in the articles of incorporation. . . .

Only the articles of incorporation may limit or deny the voting rights of any class of shares. *See also*, O.R.S. 57.311(1)(d).

O.R.S. 57.141 provides in part ". . . that the bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation".

Here, the Articles of Incorporation provided that the preferred stock was non-voting. The purported effect of Article XIII of the bylaws, urged by the defendant, is to enlarge the voting rights of the preferred stock clearly denied by the Articles of Incorporation. The bylaws could not enlarge upon those rights.

In addition, The defendant contends that under Oregon corporate law the preferred stock has certain residual voting rights. O.R.S. 57.465(3) and 57.511. Thus, the preferred stock is "voting securities" within the meaning of § 101(2)(A). The plaintiff argues that whether the shares had voting rights regarding normal operations of the corporation (i.e., voting for directors, voting for officers, hiring and firing, and developing new product lines) and not just *any* voting rights determines whether the shares are voting securities.

The plaintiff relies upon *In re UVAS Farming Corporation*, 89 B.R. 889 (Bankr.D.N.M.1988) to support his position.

In *UVAS* the principal question was whether the court should consider the size of the minority shareholder ownership interest or the voting power of its interest. In that case, certain shares had enhanced voting rights (10 votes per share). The court decided that the Congressional concept of "opportunity to control" should be determinative. It held that *voting power* is the appropriate measure of the percentage of ownership for determining "affiliate" and "insider" status.

The legislative history of the meaning of the term "voting securities" does not provide much guidance. Collier notes that, "The Code generally describes 'affiliate' as an entity with a close relationship to the debtor." 2 Collier on Bankruptcy 101–23 (§ 101.02) (1991). Furthermore, the legislative history states that the use of "directly or indirectly" in subparagraphs (A) and (B)

**1.** The Articles of Amendment under which the debtor corporation was operating when the transfers occurred were filed January 7, 1987. Chapter 60 of the Oregon Revised Statutes was adopted June 15, 1987. It repealed O.R.S. Chapter 57 and substantially revised the law pertaining to private corporations. The defendant argues that the court should apply O.R.S. Chapter 57 and look at voting rights the shareholders had under it to determine whether the stock in question was voting or not. The plaintiff argues that it does not matter. Under both O.R.S. Chapter 57 and O.R.S. Chapter 60 shareholders in a private corporation have certain limited voting rights even if a class or series of shares is described as "nonvoting" and the articles of incorporation purport to apply that designation

for all purposes. *See, e.g.,* O.R.S. 57.465(3) (all shares, regardless of voting rights under the Articles of Incorporation have the right to vote on the issues of merger, consolidation and exchange); O.R.S. 57.511 (all shares have the right to vote on sale or mortgage of assets); O.R.S. 60.441 (all shares have the right to vote on certain amendments to the articles of incorporation although the articles of incorporation provide that the shares are nonvoting shares.) O.R.S. 60.964 provides, *inter alia* that any right acquired under the provisions of Chapter 57 before its repeal are not affected by new chapter 60. This court believes the provisions of chapter 57 are applicable in this instance, but the analysis which follows would apply with equal force to a similar case arising under chapter 60.

of § 101(2) "is intended to cover situations in which there is an opportunity to control, and where the existence of that opportunity operates as indirect control." Senate Report (Reform Act of 1978) (S.Rep. No. 989, 95th Cong., 2d Sess 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807.

This court agrees that the concept of voting power is the appropriate measure to determine whether or not Burley was an affiliate of the debtor at the time of the payments in this case since it is the voting power which determines whether or not an alleged affiliate has an opportunity to control the debtor. In order to apply the concept of voting power in a meaningful manner, however, it must be applied in the context of the matter before the court. In this case, the matter before the court is the trustee's suit to recover an alleged preferential transfer.

Viewed in this context, any voting power that Burley held as a result of Oregon law giving preferred shareholders the right to vote on issues of merger, consolidation, exchange, sale or mortgage of the debtor's assets and amendments to the Articles of Incorporation, did not give Burley or other preferred shareholders the "opportunity to control" the debtor which would bring the preferred stock within the meaning of "voting securities". Such stock did not give Burley the right to direct payment of corporate debts. Only his common stock ownership interests would give him that opportunity.

### CONCLUSION

In this case, the debtor's Articles of Incorporation clearly provided that the preferred stock was non-voting. Accordingly, the preferred stock cannot be considered to be "voting securities" even though, under Oregon law, some residual voting rights might exist. Such voting rights would not give a preferred shareholder an "opportunity to control" the making of a preferential transfer similar to the transfers involved in this case.

This court, therefore, disregards Burley's ownership of preferred stock and concludes that, (since Burley held more than 20% of the common stock of the debtor at the time the payments were made) that he was an affiliate of the debtor.

Following the plaintiff's argument as set forth earlier in this opinion, the defendant was an insider of the debtor at the time it received the payments in the sum of $36,-257.91 from the debtor more than 90 days but before one year prior to the filing of the debtor's petition in this case.

Plaintiff's motion for partial summary judgment shall be granted, however, the factual issue regarding the debtor's solvency at the time of the payments cannot be decided by a motion for summary judgment and will require a trial.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052; they shall not be separately stated. An order consistent herewith shall be granted.