### In re ABC ELECTRIC SERVICES, INC., Debtor.

### ABC ELECTRIC SERVICES, INC., Plaintiff,

v.

### RONDOUT ELECTRIC, INC., Defendant.

**Bankruptcy No. 95–434–9P1.
Adv. No. 95–146.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Nov. 16, 1995.

Thomas S. Heidkamp, Ft. Myers, FL, for Plaintiff.

Mark A. Steinbeck, Ft. Myers, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

ABC ELECTRIC SERVICES, INC. (Debtor) who sought relief under Chapter 11 of the Bankruptcy Code filed an adversary proceeding against Rondout Electric, Inc. (Rondout). In its three count Complaint the Debtor sought a determination of the validity, extent, and priority of the security interest of Rondout (Count I); an order subordinating the claim of Rondout (Count II); and a suit to recover a preference (Count III).

The matter under consideration is a Motion for Summary Judgment, filed by the Debtor, directed to the claim asserted in Count III of the Complaint. The claim in this Count is based on the contention that a payment by the Debtor to Rondout on or about February 4, 1994 was a voidable preference entitling the Debtor to recover the same pursuant to § 547(b)(4)(B)(ii). The sole issue raised by the Motion under consideration is whether at the time of the transfer Rondout was an "insider" within the definition of that term set forth in § 101(31)(B) of the Code. The determination or resolution of this issue is crucial to the claim set forth in Count III because it is conceded that the transfer sought to be avoided occurred outside of the 90–day preference period provided for by § 547(b)(4)(A).

In support of the Motion the Debtor relies on the following documents which were made part of the record: (1) Joint Venture Agreement (Exhibit A), (2) Security Agreement (Exhibit B), (3) Joint Venture Agreement Amendment Three (Exhibit C), (4) Joint Venture Agreement Amendment Five (Exhibit D), (5) Seven Promissory Notes (Exhibit E, F, G, H, I, J and K), (6) Management Agreement (Exhibit L); and (7) various Purchase Orders (Exhibit M). It appears from these documents that the facts, in most part, are undisputed and are as follows:

On March 8, 1993 the Debtor and Rondout entered into a Joint Venture Agreement which called for a loan by Rondout to the Debtor in the amount of $75,000 to be repaid by the Debtor in the amount of $100,000. Subsequently, there were several different amendments to the Joint Venture Agreement and it is without dispute that Rondout did loan to the Debtor $50,000 on June 11, 1993 which was to be repaid in the amount of $52,000, a loan of $35,000 on July 23, 1993 to be repaid in the amount of $37,250, a loan on October 27, 1993 in the amount of $50,000 to be repaid at the interest rate of 24%, and a loan on October 31, 1993 in several installments in the approximate amount of $154,-000. It is equally without dispute that on February 4, 1994 the Debtor paid Rondout $111,996.97 which Rondout applied to the loan made pursuant to the Joint Venture Agreement, Amendment No. 3, that is the loan made on June 11, 1993.

The Debtor filed its Voluntary Petition for Relief under Chapter 11 on January 18, 1995, therefore it is without dispute that this payment occurred within one year immediately preceding the commencement of this Chapter 11 case. It is the Debtor's contention that its claim is governed by Section 547(b)(4)(B), the Section which governs "insider" preferences. In support of this proposition the Debtor relies on the Management Control Agreement entered into between the Debtor and Rondout on August 31, 1993. The controlling language in this Agreement appears in the last paragraph of the Agreement which provides that "ABRAHAM, by executing this Agreement, agrees to surrender total operational and financial control of ABC to RONDOUT or its designee, at any time, and in such manner, as RONDOUT shall determine."

Based on this language, the Debtor contends that Rondout was clearly an "insider" within the meaning of that term set forth in § 101(31)(B)(ii); therefore, the claim under consideration is not barred because the pay-

ment was made outside of the 90 day preference provided for by § 547(b)(4)(A).

 It should be noted at the outset that a party seeking a summary judgment first has the burden of establishing that there are no genuine issues of material fact, *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); second, that based on those facts it is entitled to a judgment as a matter of law in its favor. In determining whether or not any genuine issues of material facts exist, the record must be viewed in the light most favorable to the party opposing the motion. *U.S. v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The evidence of a non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Bankruptcy Courts interpreting the summary judgment rule F.R.C.P. 56 as adopted by B.R. 7056 generally denied motions for summary judgment unless the entire record showed a right to judgment with such clarity as to leave no room for controversy and established affirmatively that the adverse party cannot prevail under any circumstances. *Richardson v. Combs (In re Combs),* 40 B.R. 148 (Bankr. W.D.Va.1984).

 The term "insider" as defined by § 101(31)(B)(ii) provides that an insider includes, if the Debtor is a corporation, "the person in control of the Debtor." Control is to be determined by an examination of the facts and particularly whether or not the facts indicate an opportunity to self-deal or exert more control over the Debtor's affairs than is available to other creditors. *In re UVAS Farming Corp.,* 89 B.R. 889 (Bankr. D.N.M.1988). Obviously actual management of the Debtor's affairs equals control. *In re Technology for Energy Corp.,* 56 B.R. 307 (Bankr.E.D.Tenn.1985). Actual management means controlling such things as the Debtor's personnel or contract decisions, production schedules or accounts payable. *In re Chas P. Young Co.,* 145 B.R. 131 (Bankr. S.D.N.Y.1992).

There is hardly any question that the Agreement described earlier, especially the quoted language, clearly purports to give an absolute and unfettered control over the affairs of the Debtor to Rondout, in effect, resulting in the total surrender of the operation and financial affairs of the Debtor. However, in order to escape the obvious conclusion, Rondout contends that while it is true that the Management Agreement gave total control to Rondout over the affairs of the Debtor, this control was in fact not exercised and the mere opportunity to control is not enough.

In support of this proposition Rondout relies on two Affidavits, one by Wilbur J. Whitman, President of Whitman, and the other by Domanica Douglas, a former employee of the Debtor, currently employed by Rondout. In his Affidavit, Whitman categorically denied that either he or any employee of Rondout (1) made or participated in any management decisions concerning the hiring or firing of the Debtor's employees; (2) controlled or directed the work or job performance of any employee of the Debtor; (3) directed or authorized the payment of the Debtor's payroll or any other expense of the Debtor; or (4) directed nonpayment of any of the debts of the Debtor. Whitman further denied that he ever bid on any contract on behalf of the Debtor, reviewed or approved any tax returns of the Debtor, or formulated or executed operation or fiscal policies of the Debtor.

The Affidavit of Douglas contains mostly hearsay but, in essence, corroborates the facts stated in the Whitman Affidavit. It should be evident from the foregoing that in order to conclude that Rondout was an insider at the relevant time, it must appear from the record that Rondout had the power to exercise control regardless whether it did or did not, in fact, exercise the control.

 The phrase "person in control of the debtor" found no precise definition in cases which dealt with this issue. The interpretation of the term and, in turn, the determination of the insider status has been made on a case-by-case basis. *DeRosa v. Buildex, Inc. (In re F & S Central Mfg. Corp.),* 53 B.R. 842 (Bankr.E.D.N.Y.1985). Cases usually focused on two factors in considering the

676

insider status of the transferee: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transaction between the transferee and the debtor was conducted arm's length. *In re Holloway,* 955 F.2d 1008 (5th Cir.1992). There is hardly any doubt that actual management of the debtor's affairs is sufficient to find the control required. *In re Technology for Energy Corp., supra.* On the other hand, a mere potential to exercise control may not be enough. For instance, if the loan agreement between the transferee and the debtor is an independent and arm's length transaction and a provision in the loan agreement might have led to a control upon default which never materialized or never threatened to be implemented, the transferee was not "in control of the debtor." *F & S Central Mfg. Co., supra.* Exercise of financial control by a creditor over a debtor which is merely incident and limited to the creditor-debtor relationship does not make the creditor an insider. *Johnson v. NBD Park Ridge Bank (In re Octagon Roofing),* 124 B.R. 522 (Bankr.N.D.Ill.1991); *In re Badger Freightways, Inc.,* 106 B.R. 971 (Bankr.N.D.Ill. 1989).

Applying the foregoing principles to the facts before this Court, it is clear that even if there are no genuine issues of material facts, which is not conceded in light of the two affidavits, the record would not support a judgment on the issue of the insider status of Rondout as a matter of law.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment addressed to the claim set forth in Count III be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that a pre-trial conference be, and the same is hereby, scheduled for the 7th day of December, 1995 at 10:00 a.m. to prepare the claims for final disposition.

DONE AND ORDERED.