**In re OPTICAL TECHNOLOGIES, INC., et al., Consolidated Debtors.**

**DeLaine Gray, as Distribution Trustee for the Consolidated Debtors, Appellant,**

v.

**Raymond Manklow and Jean Francois Vincens, Appellees.**

No. 8:98–CV–2382–T–17A, 8:99–CV–1919–T–17C.

United States District Court, M.D. Florida, Tampa Division.

July 27, 2000.

---

### ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on appeal from the entry of final summary judgment in Appellant's Adversary Proceeding in the Bankruptcy Court below pursuant to 28 U.S.C. § 158.

I. *Standard of Review*

This Court functions as an appellate court in reviewing a bankruptcy court's decision. 28 U.S.C. § 158. Findings of

fact by the bankruptcy judge shall be upheld on appeal unless found to be clearly erroneous. *See* Bankruptcy Rule 8013; *In re Downtown Properties, Ltd.,* 794 F.2d 647 (11th Cir.1986). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See United States v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Further, appellants are entitled to an independent, de novo review of all conclusions of law and the legal significance accorded to the facts. *See In re Noll,* 249 B.R. 568, 569 (M.D.Fla.2000).

## II. *Facts*

In an effort to clarify the present status of this action, this Court finds that it is necessary to set out the general factual and procedural history that has developed in this case.

In 1990, Appellees, Jean Francois Vincens [hereinafter "Vincens"] and Raymond Manklow [hereinafter "Manklow"] founded Recomm International Display Corporation [hereinafter "Recomm International"]. In addition to Recomm International, Vincens and Manklow founded several other subsidiary companies. In January of 1994, Vincens and Manklow owned and/or controlled: 1) Recomm International; 2) Recomm International Display Corporation, Ltd. [hereinafter "Recomm Display Corp."]; 3) Recomm International Display, Ltd. [hereinafter "Recomm Display, Ltd."]; 4) Recomm Advertising, Ltd. [hereinafter "Recomm Advertising"]; 5) Automated Travel Center, Inc. [hereinafter "Automated Travel"]; and, 6) Automated Travel Center, Canada, Ltd. [hereinafter "Automated Travel Canada"].

Recomm Enterprises, Inc. [hereinafter "Recomm Enterprises"] was incorporated on October 25, 1993. Recomm Enterprises was allegedly incorporated to merge with, and take over, Recomm International's role as the controlling Recomm company. However, according to Vincens and Manklow, the merger of Recomm International and Recomm Enterprises never took place and the corporate records filed with the State of Florida do not reflect the filing of any Articles of Merger between Recomm Enterprises and Recomm International. Recomm Enterprises, according to Manklow and Vincens, was a "shell" corporation with no business functions. The Schedules filed by Recomm Enterprises in the Chapter 11 bankruptcy proceeding state that Recomm Enterprises' sole creditor is Manklow.

On January 3, 1994, Manklow and Vincens entered into a Stock Purchase Agreement with Sandra Braddock [hereinafter "Braddock"], Jesse Carter [hereinafter "Carter"], and Robert Kellish [hereinafter "Kellish"]. Pursuant to this Stock Purchase Agreement, Manklow and Vincens agreed to sell six hundred (600) shares of stock in Recomm International to Braddock, Carter, and Kellish for $140,000.00.

On January 4, 1994, Manklow and Vincens entered into a Share Redemption and Purchase Agreement with Recomm International. Pursuant to this Share Redemption and Purchase Agreement, Manklow and Vincens agreed to redeem 99,600 shares of stock in Recomm International for the price of $21,976,080.00. According to Manklow and Vincens, the purchase price was to be paid to Manklow and Vincens through two promissory notes. As a result of the January 3, 1994, and January 4, 1994, transactions, Braddock, Kellish, and Carter became the owners of all the Recomm companies' stock.

As a result of the terms contained in the agreements, Manklow and Vincens purported to divest themselves of all ownership and interest in Recomm International, and all other Recomm companies. In addition, on December 19, 1993, Vincens executed a letter of resignation, resigning as a director, officer, and employee of Recomm International. On January 4, 1994, Manklow also executed a letter of resignation,

resigning as a director, officer, and employee of Recomm International.

On the same day Manklow resigned from Recomm International, Manklow executed a Business Consultant and Management Agreement with Recomm International. Pursuant to this agreement, Manklow agreed to act as Recomm International's consultant on issues relating to marketing and management functions. According to Vincens and Manklow, the parties specifically stated that Manklow was not an employee of Recomm International, but was a private contractor. Further, through the written action of the Directors of Recomm International, Manklow was named Chairman of the Executive Committee.

According to Manklow and Vincens, after January 4, 1994, neither Manklow, nor Vincens were officers, directors, or shareholders of any Recomm company. From January 4, 1994, Recomm International, and all other Recomm companies, were owned and operated by Carter, Kellish, and Braddock. In fact, on January 13, 1994, Manklow allegedly issued a memo to the staff of the Recomm companies announcing that Carter had been named President, Kellish had been named Vice President, and Braddock had been named Secretary/Treasurer of the Recomm companies.

Recomm Operations, Inc. [hereinafter "Recomm Operations"] was incorporated on December 28, 1994; nearly one year after Vincens allegedly relinquished all control in the Recomm companies. According to Manklow and Vincens no evidence exists to show that Recomm Operations merged with, or is affiliated to, any other Recomm company.

On August 2, 1996, Recomm Operations and Recomm Enterprises filed a Second Amended Complaint against Appellees Manklow and Vincens in the Bankruptcy Court. The Second Amended Complaint sets forth nineteen separate counts against Manklow and Vincens. Nine separate counts are alleged against each Vincens and Manklow for a total of eighteen (18) counts. These eighteen (18) counts against Vincens and Manklow relate to alleged voidable transfers of money under 11 U.S.C. §§ 547, 548(1), 550, and Florida Statute § 726.105(1)(a)-(b). In the last count, Count XIX, of the Second Amended Complaint, Appellants alleged that Manklow and Vincens owed a fiduciary duty to one of the Recomm corporations, and the corporation's creditors.

Appellants allege within their Second Amended Complaint that Recomm Enterprises transferred:

1) $200,000.00, to Vincens on April 11, 1995;

2) $1,000,000.00, to Vincens on May 25, 1995;

3) $1,000,000.00, to Vincens on May 26, 1995;

4) $241,987.00, to Vincens in February 1994;

5) $66,216.00, to Vincens in April 1994;

6) $117,967.00, to Vincens in May 1994;

7) $100,000.00, to Vincens in July 1994;

8) $100,00.00, to Vincens in August 1994;

9) $100,000.00, to Vincens in September 1994;

10) $200,000.00, to Vincens in October 1994;

11) $200,000.00, to Vincens in November 1994;

12) $50,000.00, to Vincens in December 1994;

13) $241,987.00, to Manklow in February 1994;

14) $66,216.00, to Manklow in April 1994;

15) $117,967.00, to Manklow in May 1994;

16) $100,000.00, to Manklow in July 1994;

17) $100,000.00, to Manklow in August 1994;

18) $100,000.00, to Manklow in September 1994;

19) $200,000.00, to Manklow in October 1994;

20) $200,000.00, to Manklow in November 1994;

21) $50,000.00, to Manklow in December 1994;

22) $200,000.00, to Manklow win April 1995; and,

23) $300,000.00, to Manklow in July 1995.

Appellants' Second Amended Complaint alleges that Recomm Operations transferred:

1) $489,000.00, to Vincens from January through June 1992;

2) $206,000.00, to Vincens in July 1992;

3) $206,000.00, to Vincens in August 1992;

4) $256,000.00, to Vincens in September 1992;

5) $226,000.00, to Vincens in October 1992;

6) $293,000.00, to Vincens in November 1992;

7) $439,000.00, to Vincens in December 1992;

8) $33,000.00, to Vincens in May 1992;

9) $33,000.00, to Vincens in June 1992;

10) $33,000.00, to Vincens in August 1992;

11) $33,000.00, to Vincens in September 1992;

12) $33,000.00, to Vincens in October 1992;

13) $33,000.00, to Vincens in November 1992;

14) $33,000.00, to Vincens in December 1992;

15) $346,000.00, to Vincens in February 1993;

16) $356,000.00, to Vincens in March 1993;

17) $386,000.00, to Vincens in April 1993;

18) $346,000.00, to Vincens in May 1993;

19) $331,000.00, to Vincens in June 1993;

20) $326,000.00, to Vincens in July 1993;

21) $326,000.00, to Vincens in August 1993;

22) $326,000.00, to Vincens in October 1993;

23) $500,000.00, to Vincens in December 1993;

24) $489,000.00, to Manklow from January through June 1992;

25) $206,000.00, to Manklow in July 1992;

26) $206,000.00, to Manklow in August 1992;

27) $256,000.00, to Manklow in September 1992;

28) $226,000.00, to Manklow in October 1992;

29) $293,000.00, to Manklow in November 1992;

30) $439,000.00, to Manklow in December 1992;

31) $33,000.00, to Manklow in May 1992;

32) $33,000.00, to Manklow in June 1992;

33) $33,000.00, to Manklow in August 1992;

34) $33,000.00, to Manklow in September 1992;

35) $33,000.00, to Manklow in October 1992;

36) $33,000.00, to Manklow in November 1992;

37) $33,000.00, to Manklow in December 1992;

38) $346,000.00, to Manklow in February 1993;

39) $356,000.00, to Manklow in March 1993;

40) $386,000.00, to Manklow in April 1993;

41) $346,000.00, to Manklow in May 1993;

42) $331,000.00, to Manklow in June 1993;

43) $326,000.00, to Manklow in July 1993;

44) $326,000.00, to Manklow in August 1993;

45) $326,000.00, to Manklow in October 1993; and,

46) $500,000.00, to Manklow in December 1993.

In response to Appellants' Second Amended Complaint, Manklow and Vincens allege that any payments made to Vincens and Manklow in the years 1993 and 1994, were not and could not have been made by Recomm Operations or Recomm Enterprises. Further, Vincens alleges that any payments made before the dates that Recomm Enterprises and Recomm Operations were incorporated could not logically have been made by either Recomm Enterprises or Recomm Operations. Manklow and Vincens point out that contrary to Appellants' Second Amended Complaint, the Schedules of expense reimbursements filed with Appellants' Second Amended Complaint do not show that money was paid to Vincens during 1994 or 1995.

Appellants' Second Amended Complaint, Vincens' Motion for Summary Judgment, and Manklow's Motion for Summary Judgment all raise issues centering around the payments made to Manklow and Vincens. More specifically, this case raises issues relating to: 1) Which Recomm company actually made payments; 2) When the payments were specifically paid; and, 3) Why these payments were made. Complicating these issues even further, is a Circuit Court decision filed in the State of Florida that involves similar issues of merger, control, and accountability of the various Recomm companies, their creditors, debtors, and owners. At the time the Bankruptcy Court granted Manklow and Vincens' Motions for Summary Judgment, the Circuit Court had issued an opinion finding that a *de facto* merger had occurred between the Recomm companies allegedly making the fraudulent transfers to Manklow and Vincens. However, neither Manklow, nor Vincens, were parties to the Circuit Court litigation. In response to Manklow and Vincens' Motions for Summary Judgment, Appellants relied almost exclusively on the Circuit Court order finding the existence of a *de facto* merger of various Recomm companies to support their claims against Manklow and Vincens.

After conducting a hearing on Manklow and Vincens' Motion for Summary Judgment, the Bankruptcy Court entered an Order Granting Manklow and Vincens' Motion for Summary Judgment. The Bankruptcy Court granted Manklow and Vincens' Motions for Summary Judgment and stated that the Circuit Court finding that a *de facto* merger occurred "failed to cut the mustard." The Bankruptcy Court pointed out that Manklow and Vincens were not parties to the litigation in Circuit Court, and, therefore, were not subject to the Circuit Court's jurisdiction. In addition, the Bankruptcy Court found that even if the Circuit Court effectively declared that all assets and liabilities of the two entities allegedly making the fraudulent transfers were assets of the debtor entities, the right to assert the claims against the alleged fraudulent transfers does not rest with the debtors currently asserting these claims. According to the Bankruptcy Court, the alleged fraudulent transfers occurred well before the alleged *de facto* merger occurred.

As to the fiduciary duty claims against Manklow and Vincens, the Bankruptcy Court found that Manklow and Vincens were not officers or directors of the Debtor companies at the same time that they were officers or directors of the non-debtor companies. The Bankruptcy Court found that the record of the case failed to establish that any positions were occupied by Manklow or Vincens that would establish the existence of a fiduciary duty; therefore, the Bankruptcy Court entered judgment in favor of Manklow and Vincens as to all counts.

On December 2, 1998, this Court relinquished jurisdiction over Appellants' appeal to allow the Bankruptcy Court an

opportunity to enter an order vacating the orders appealed from, based on new events occurring after the entry of those orders. (Dkt.9). On June 9, 1999, the Bankruptcy Court denied Appellants' Motion to Vacate Final Judgment as a Result of Events Occurring After the Date of Judgment.

### III. *Discussion*

Appellants raise four issues on appeal: 1) Whether the bankruptcy court committed reversible error by granting summary judgment to the defendants where material issues of fact regarding the merger of the various Recomm entities existed in the record; 2) Whether the bankruptcy court committed reversible error by granting summary judgment to the defendants where material issues of fact regarding control of the various Recomm entities existed in the record; 3) Whether the bankruptcy court erred by entering summary judgment despite the existence of at least two undisputed payments by the appellants; and, 4) Whether the bankruptcy court erred by refusing to vacate summary judgment despite subsequent events. This Court finds Appellants' allegations to be without merit.

■ This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard of review. *See In re Patterson*, 967 F.2d 505, 508 (11th Cir.1992)(citing *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir.1992)). The Bankruptcy Court's conclusions of law are reviewed under the de novo standard of review. *See id.*

Federal Rule of Civil Procedure 56 is made applicable to bankruptcy cases through Bankruptcy Rules 7056 and 9014. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt.*

*Pleasant,* 595 F.2d 994, 996–97 (5th Cir. 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292, 297 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

### A. *Merger, Control, and Payments*

■ Appellants state that the Bankruptcy Court committed reversible error when the Bankruptcy Court granted summary judgment in Appellee's favor. Appellant states that material issues of fact existed in the record before the Bankruptcy Court regarding whether the various Recomm corporate entities had undergone a *de facto* merger.

In the Bankruptcy Court's Order Granting Summary Judgment, the Bankruptcy Court stated that:

> The Debtors concede that the payments, which the Debtors contend are preferential and/or fraudulent transfers, were made by non-debtors. The Debtors also concede that the funds paid to Manklow and Vincens technically were not funds of the estate of [Recomm] Operations. Nevertheless, in opposition to the Motions for Summary Judgment, the Debtors contend that the payments to Manklow and Vincens were, in fact, payments by the Debtors based on a *de facto* merger of the non-debtor entities which made the payments into [Recomm] Operations. This contention is the result of a Final Judgment entered by the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (Circuit Court), in Case No. 97–3285, styled, *Optical Technologies, et al.*

> *v. Robert Kellish and Sandra Braddock.* In that suit the Circuit Court determined that a *de facto* merger occurred . . . effective January 1, 1995.

> Concerning the Second Amended Complaint, this Court is satisfied that the finding by the Circuit Court of the *de facto* merger equally fails to cut the mustard. Manklow and Vincens were not parties in the State Court litigation. Only Robert Kellish and Sandra Braddock, the officers of one of the Debtors, were named defendants. It follows that the Final Judgment which declared this so-called *de facto* merger cannot possibly be binding on Manklow and Vincens or on the non-debtor entities. . . . Even assuming that the Final Judgment had effectively declared that all assets and liabilities of the two non-debtor entities which made the transfers are assets of these Debtors, the right to assert these claims could not be bestowed on these Debtors. This is for the simple reason that the payments by the non-debtors were made long before the effective date of this so-called *"de facto* merger." **In sum, this Court is satisfied that based on the undisputed facts as they appear from this record, none of the claims attacked as either preferential or fraudulent transfers subject to avoidance can be sustained.**

(Dkt.1, Bankr.Dkt.160)(emphasis added).

Appellants assert that the Bankruptcy Court committed reversible error by granting summary judgment when material issues of fact existed concerning the issue of *de facto* merger. However, this Court has completely reviewed the record and finds that material issues of fact concerning the alleged *de facto* merger of various Recomm companies do not exist. As this Court previously stated, the mere conclusory allegations of a party opposing summary judgment will not avoid summary judgment.

Appellants conceded within the bankruptcy record that the alleged preferential

and/or fraudulent transfers to Manklow and Vincens came from non-debtor companies. While Appellants allege that these transfers are attributable to Debtor companies based on theories of *de facto* merger, Appellants have failed to provide this Court with any competent evidence of this *de facto* merger. In asserting the theories of *de facto* merger, Appellants relied extensively on the Circuit Court's finding that a *de facto* merger occurred between various Recomm companies; however, as the Bankruptcy Court pointed out, Manklow and Vincens were not parties to this Circuit Court litigation and the effective date of the so-called *de facto* merger was long after Manklow and Vincens received the payments at issue in this suit. While Appellants did not exclusively rely on the Circuit Court's finding, Appellants failed to establish any competent evidence within the bankruptcy record to show any so-called *de facto* merger of the Recomm companies at the time the alleged preferential and/or fraudulent transfers occurred. Therefore, after considering the entire bankruptcy record, this Court finds that the Bankruptcy Court did not commit reversible error in granting summary judgment, based on the lack of evidence within the record to show a *de facto* merger.

■ Appellants state that the Bankruptcy Court also committed reversible error by granting summary judgment to Manklow and Vincens because material issues of fact regarding the control of the various Recomm entities existed in the record. Appellants state that Bankruptcy Court erred in finding that summary judgment was appropriate because issues in the record existed as to what, if any, control Manklow and Vincens held in the Recomm entities at the time the alleged preferential and/or fraudulent transfers occurred. However, after completely reviewing the Bankruptcy Court's Order Granting Summary Judgment, and the entire record of this case, this Court finds that summary judgment is appropriate.

■ Manklow and Vincens no longer held positions with the Debtors after late December of 1993, or early January of 1994. Manklow and Vincens were not officers or directors of the Debtor companies at the same time that they were officers of the non-debtor companies. In order to prove the elements of a preference, Appellants must prove that Manklow and Vincens were insiders for a corporate debtor. Under Section 101(31)(B) of the Bankruptcy Code, an insider for a corporate debtor includes directors, officers, and all persons in control of the debtor, as well as others. When determining whether control is exerted over a company, the Court must focus on whether a defendant had an opportunity to exert more control over the corporate affairs than other creditors are given. *See In re ABC Electric Services, Inc.,* 190 B.R. 672 (Bankr.M.D.Fla.1995). However, to be determined a person in control, the person must hold the ability to control the company so as to dictate corporate policy and disposition of corporate assets without limits. *See In re Badger Freightways, Inc.,* 106 B.R. 971 (Bankr. N.D.Ill.1989).

As to issues of control, the Bankruptcy Court stated that:

> the Defendants were never officers or directors of the Debtors while they were officers of the non-debtors. They no longer held positions with the Debtors after 1993. Vincens left the United States and had absolutely nothing to do with the affairs of any of these entities. As to Manklow, one **might** argue that there is evidence in this record to warrant the inference that he was, in fact, the person controlling the Debtors' affairs even after he ostensibly divested himself of all interest in the non-debtor entities. **The record, however, is short to warrant such a conclusion.**

(Dkt.1, Bankr.Dkt.160)(emphasis added).

After reviewing the entire record and the Bankruptcy Court's Order, this Court finds that the Bankruptcy Court did not

make improper factual determinations when granting summary judgment, and, the record does not establish material issues of fact as to the control, if any, held by Manklow and Vincens over the various Recomm companies. Manklow and Vincens did not hold positions with the Debtors after the beginning of 1994, and nothing is contained in the record to show that either Manklow or Vincens retained sufficient amounts of control over the Recomm companies. Therefore, summary judgment is appropriate.

As Appellants failed to provide competent evidence within the record of a merger of the Recomm companies, or a *de facto* merger of the Recomm companies, and of continuing control by Vincens and/or Manklow of the various Recomm companies, this Court finds that the Bankruptcy Court did not err in granting Manklow and Vincens' Motions for Summary Judgment. Material issues of fact did not exist within the record regarding the merger of various Recomm entities. Material issues of fact did not exist within the record as to the control allegedly held by Manklow and/or Vincens over Recomm entities. Further, material issues of fact did not exist within the record as to the existence of undisputed payments made by the Appellants.

### B. *Bankruptcy Court's Failure to Vacate Summary Judgment*

■ Appellants state that the Bankruptcy Court erred by failing to vacate the entry of summary judgment despite the occurrence of events that allegedly had a direct bearing on the issue of whether the Debtor entities has standing to assert the claims at issue in Manklow and Vincens' Motions for Summary Judgment. Appellants state that the entry of summary judgment should have been vacated by the Bankruptcy Court because the two corporate entities that made a large portion of the payments alleged to be preferential and/or fraudulent filed bankruptcy petitions in February 1998, and had their pro-ceedings substantively consolidated with the other Recomm entities.

As the Bankruptcy Court stated:

The substantive consolidation of several estates means one thing and one thing only—that all assets of the several entities are pooled and all creditors of the several entities are entitled to share in the pooled assets in accord with their respective rights. It would certainly be a violation of due process if the order of substantive consolidation would operate to destroy the defenses and rights which existed prior to the entry of the order of substantive consolidation. *Murray Industries, Inc.* 125 B.R. 314, 317 (Bankr. M.D.Fla.1991).

(Dkt. 15, exhibit C). This Court has reviewed the entire record, the Bankruptcy Court's Order denying Appellants' Motion to Vacate, and the Briefs filed by Appellants and Appellees, and finds that the Bankruptcy Court's Order Denying Appellants' Motion to Vacate Summary Judgment must be affirmed. For this Court to reverse the Bankruptcy Court's Order Granting Summary Judgment because two months after the entry of final judgment in the bankruptcy proceeding, the estates of several entities were substantively consolidated, would, at the very least, violate Manklow and Vincens' due process rights. This Court will not violate Manklow and Vincens due process rights. Accordingly, it is

**ORDERED** that this Court **AFFIRMS** the Final Judgment entered in the Bankruptcy Court Adversary No. 96–256. The Clerk of the Court be **DIRECTED** to enter judgment in accordance herewith.