**In re George Edward CASSIDY, M.D., Debtor.**

**George Edward Cassidy, M.D., Plaintiff,**

**v.**

**Advanced Imaging Center of Northern Illinois Limited Partnership, an Illinois Limited Partnership and Spiro Gerolimatos, M.D., an Individual, Defendants.**

**Bankruptcy No. 9:05BK27075 ALP.**
**Adversary No. 05–938.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Aug. 3, 2006.

Harley E. Riedel, Stichter, Riedel, Blain and Prosser, Tampa, FL, for Debtor.

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT RE: DEBTOR'S COMPLAINT FILED BY ADVANCED IMAGING CENTER OF NORTHERN ILLINOIS LIMITED PARTNERSHIP (Doc. No. 5) AND SPIRO GEROLIMATOS, M.D. (Doc. No. 6) and DEBTOR'S CROSS MOTION FOR SUMMARY JUDGMENT ON COMPLAINT (Doc. No. 9)**

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 11 case of George Edward Cassidy, M.D. (the Debtor) is a challenge of the validity of a lien claimed by Spiro Gerolimatos, M.D. (Dr. Gerolimatos) and Advanced Imaging Center of Northern Illinois Limited Partnership (AIC), (The Judgment Creditors) the Defendants named in the above-captioned adversary proceeding filed by the Debtor. The Debtor, in his Complaint, sets forth six (6) separate claims in six separate counts.

The claim in Count I is based on the contention that the Judgment Creditors' interest in the Diagnostic Imaging Services, Inc. (DIS) stock certificate, which was perfected by the entry of the DIS Stock Transfer Order, was a voidable transfer pursuant to Section 547(b) of the Code. On July 21, 2005, the Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois—Law Division (the McHenry County Court), entered the DIS Stock Transfer Order. The Debtor contends that the DIS Stock Transfer Order (1) was a transfer within the meaning of Section 101(54); (2) that the transfer occurred within 90 days prior to the commencement of this Chapter 11 case filed by the Debtor; and (3) that it was on account of an antecedent debt and was entered when the Debtor was insolvent. Therefore, pursuant to Section 547(b), the Debtor seeks to avoid the entry of the DIS Stock Transfer Order and to preserve the DIS Stock Certificate for benefit of the estate under Section 551 of the Code.

The claim in Count II of the Complaint pled in the alternative that the Judgment Creditors obtained a lien on the DIS stock owned by the Debtor within 90 days of the commencement of the Chapter 11 case and that lien was also avoidable as a preference under Section 547(b)(4)(A) of the Code.

The claim in Count III is asserted against AIC and is based on the contention

that the interest acquired by AIC in the DIS stock is avoidable based on an insider preference pursuant to Section 547(b)(4)(B).

The claim in Count IV is asserted against Dr. Gerolimatos based on the allegation that Dr. Gerolimatos' interest in the stock is avoidable also as an insider preference pursuant to Section 547(b)(4)(B)

The claim in Count V, asserted against DIS (sic) and Dr. Gerolimatos, seeks to recover avoidable transfers pursuant to Section 550 against AIC and Dr. Gerolimatos as immediate transferees. The last claim is in Count VI and seeks a turnover of the DIS stock certificate from the AIC and Dr. Gerolimatos pursuant to Section 542.

The immediate matters before this Court are three Motions for Summary Judgment filed in the above-captioned Adversary Proceeding. The first Motion for Summary Judgment was filed by AIC (Doc. No. 5) and the second filed by Dr. Gerolimatos (Doc. No. 6). The third is a Cross Motion for Summary Judgment filed by the Debtor (Doc. No. 9)

The Motion for Summary Judgment filed by AIC is directed to Count I, Count II, Count III, Count V and Count VI of the Complaint filed by the Debtor against AIC and others. The Motion for Summary Judgment filed by Dr. Gerolimatos is directed to Count I, Count II, Count IV, Count V and Count VI of the Complaint filed by the Debtor against Dr. Gerolimatos and various other corporations.

Both AIC and Dr. Gerolimatos contend that there are no genuine issues of material fact and they are entitled to a judgment in their respective favors as a matter of law dismissing with prejudice all claims asserted against them by the Debtor.

The Debtor filed its own Cross Motion for Summary Judgment (Doc. No. 9).

This Motion is actually redundant in that it seeks to avoid a preferential transfer, a claim that is already asserted in his six-count Complaint concerning the DIS stock.

The Motions were scheduled for hearing in due course and after extensive argument in support of and in opposition of the respective positions of the parties and having considered the argument of counsel and submissions, this Court now finds and concludes as follows.

In order to unravel the convoluted facts relevant not only to the Chapter 11 case of Dr. Cassidy, but also the Chapter 11 case of DIS, a corporation currently involved in a Chapter 11 case in the Northern District of Illinois, it is necessary to try to separate the wheat from the chaff, to disregard the rhetoric of counsel, and consider only matters which directly relate to the ultimate issues to be resolved by this Court.

Sometime prior to December 5, 2003, the Judgment Creditors filed a suit in the McHenry County Court against the Debtor. On December 5, 2003, a retired Judge entered an arbitration award against the Debtor and in favor of AIC and Dr. Gerolimatos in the amount of $2.2 million. On April 27, 2004, the McHenry County Court confirmed the arbitration award in all respects except the amount of attorney's fees and entered a judgment in favor of AIC and Dr. Gerolimatos which totaled $1,827,004. ($946,829 in favor of AIC and $880,175 in favor of Dr. Gerolimatos). In due course, the Debtor appealed the judgment. On June 14, 2005, the Illinois Appellate Court affirmed most of the judgment of the court below and only modified the judgment in two respects. First, it reinstated the $500,000 attorney's fee award against the Debtor and in favor of AIC and an entity known as Centegra and modified the judgment order to provide for statutory interest on the entire judgment amount, including post-award interest.

On February 2, 2004, DIS entered into a ten-year lease with Kipgo Development Group, LLC, (Kipgo) for an office condominium located at 912 West N.W. Highway, Fox River Grove, Illinois (Fox River Grove Facility). The Lease contained an option to purchase. As a condition to incur the build-out expense in executing the Lease, the Debtor personally guaranteed the Lease. The Debtor pledged his DIS stock to Kipgo as collateral security for the guarantee. It is without dispute that the DIS stock certificates were in fact delivered to Kipgo on February 2, 2004. It appears that on January 5, 2005, Retek Development, LLC (Retek), purchased the Fox River Grove Facility from Kipgo. After the affirmance of the judgment by the Illinois Court of Appeals and after having obtained leave from the McHenry County Court, AIC and Dr. Gerolimatos served an Alias Citation to Discover Assets on the Debtor's counsel of record in the Illinois litigation on July 27, 2004. On April 1, 2005, AIC and Dr. Gerolimatos served a Third Party Citation to Discover Assets upon Kipgo. On June 2, 2005, counsel for Kipgo, in response to the Citation, stated that Kipgo does have possession of the DIS stock certificate but it would not take any further action concerning the DIS stock until he received an appropriate order from the McHenry County Court. On June 22, 2005, the Judgment Creditors filed a motion for turnover in the McHenry County Court requesting the DIS stock certificates be turned over to them in partial satisfaction of the judgment. On June 23, 2005, Kipgo sent a letter to counsel for the Judgment Creditors stating that Kipgo has no interest in the DIS stock certificates, in the pledge agreement, or in the Lease since Kipgo sold the Fox River Grove Facility to Retek. On or about June 23rd or 24th 2005, Retek filed a response to the Motion for Turnover of Corporate Stock and asserted that it should have acquired Kipgo's rights on the pledge agreement but through inadvertence of Kipgo and Retek it did not formally effectuate a transfer of the collateral securing the lease.

On June 27, 2005, the McHenry County Court entered an Order allowing Kipgo's attorneys to maintain possession of the DIS stock certificates until the Court ruled on the Motion. On July 21, 2005, the McHenry County Court heard the Motion for Turnover and at the conclusion of the turnover motion hearing ruled that Kipgo lost its lien on the DIS stock certificate upon the consummation of the Fox River Grove Facility sale; that Retek failed to acquire a lien on the DIS stock certificate and ordered the stock certificate to be delivered to the Court. It also ruled that the Judgment Creditors have a superior interest in the 1000 shares of the DIS stock, and they are the only parties of interest holding a lien on the stock.

On August 31, 2005, the McHenry County Court entered an order authorizing the Sheriff to conduct a sale in accordance with the Illinois Code of Civil Procedure.

On October 14, 2005, the Debtor filed his Petition for Relief under Chapter 11 in this Court which, of course, stopped any further proceedings in the Illinois Court concerning the DIS stock.

On May 26, 2006, AIC and Dr. Gerolimatos filed a Motion for Appointment of Chapter 11 Trustee and Request for Expedited Hearing Thereon (Doc. No. 86) (Motion for Appointment). Attached to their Motion as Exhibit I was a copy of the Disclosure Statement filed by DIS in its pending Chapter 11 case in the Northern District of Illinois, Eastern Division, Case No. 05–55604. Subsection (e) of the Disclosure Statement sets forth the provisions of the Plan of Reorganization concerning the treatment of Class 5.

According to the Disclosure Statement and the Plan, Class 5 consists only of all outstanding shares in DIS owned by the Debtor. According to the Plan, this Subsection does not provide for any distribution to the Debtor on account of his interest in the DIS stock. Neither does the Plan provide for the retention of the DIS Stock by the Debtor, which stock will be cancelled and extinguished on the effective date of the Plan.

It is evident from the record not only of this case but the case of DIS that, while it is true that the 1000 shares of DIS stock are owned by the Debtor, they present no economic value to his estate. It is clear from the Plan filed by DIS that the stock is to be cancelled and the reorganized DIS will issue new stock. The fact that the new stock is to be issued to the Debtor's children is of no consequence because it still would not be the property of this Debtor's estate.

■ Notwithstanding the foregoing, this Court is satisfied that the Debtor's Complaint, which seeks to invalidate the lien acquired by the Judgment Creditors as a voidable preference, is not supported by the applicable law of Illinois, which is the appropriate law to be considered in resolving the issue. *Commercial Credit Co. v. Davidson,* 112 F.2d 54 (5th Cir.1940); *Farm Credit Bank of St. Louis v. Lucas,* 152 B.R. 244, 247 (C.D.Ill.1993) ("a trustee may not avoid a transfer under Section 547(e)(2)(B) that he/she could not avoid as a judgment creditor under state law")(citing *In re Chaseley's Foods, Inc.,* 726 F.2d 303, 307 (7th Cir.1983)). *See also Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978)("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in

a bankruptcy proceeding.")(citing *Lewis v. Mfrs. Nat'l Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)).

The lien claim of the Judgment Creditors is based on 735 ILL COMP. STAT. 5/2–1402(m) which provides that the judgment becomes a lien when a citation is served in accordance with Subsection (a), *Cacok v. Covington,* 111 F.3d 52, 54 (7th Cir.1997) ("lien is considered perfected as of the date of service of the citation."); *In re Nowicki,* 202 B.R. 729, 737 (Bankr. N.D.Ill.1996)

In the present instance, service on the Debtor's counsel of the "Citation" was on July 27, 2004. The service of the Citation was a proper service pursuant to an Order of the McHenry County Court dated July 26, 2004. Pursuant to Illinois law the lien attached and was perfected on all the Debtor's personal property, including the DIS stock, for over one year prior to the Bankruptcy Petition date. At the time Cassidy was served with the Citation the DIS stocks were physically in the possession of Kipgo. While it is true that the DIS stock was not in actual physical possession or control by the Debtor when the Citation was served, it is undisputed that the Debtor retained all rights of ownership in the pledged DIS stock and had a right to vote the stock and receive distributions. Although when the Citation was served on the Debtor's counsel that service did not effectively fix the lien for the stock in question, it is clear that the lien attached to the stock when the Citation was served on Kipgo, which was more than 90 days prior to the filing of the Petition.

■ To overcome this fact, the Debtor contends that Dr. Gerolimatos was an insider, therefore, the preference could be asserted against him even though the transfer occurred not within 90 days, but prior to the expiration of one year preced-

ing the commencement of the Chapter 11 case.

The term insider is defined by Section 101(31) and in the case of an individual is (i) a relative of a debtor or of a general partner of a debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of a debtor; or (iv) corporation of which the debtor is a director, officer or person in control. While Dr. Gerolimatos and the Debtor have been business partners in the same entities, Dr. Gerolimatos was never a general partner in any entity in which the Debtor was involved. The insider preference provision of the Code was clearly enacted to prevent an insider dealing when the parties have a sufficiently close relationship so the Debtor's conduct is made subject to closer scrutiny than those dealing at arm's length. H.Rep.100–1011, 1988. In considering an insider preference the courts consider the closeness of the relationship between the transferee and the debtor and whether the transaction between the transferee and debtor was conducted at arm's length. *In re ABC Elec. Svs., Inc.*, 190 B.R. 672, 675 (Bankr. M.D.Fla.1995) (citing *In re Holloway*, 955 F.2d 1008 (5th Cir.1992)).

The transfer under consideration in the present instance was an involuntary transfer between parties who were involved in vigorously contested litigation prior to the transfer in question. Under this factual scenario it is obvious that none of the factors outlined above would be relevant because neither the facts leading up to the transfer nor the conduct of the parties could hardly be described as anything more amicable than an arm's length transaction. Lastly, this record leaves no doubt that the lien claims of the Judgment Creditors were determined with finality by the McHenry County Court when that Court entered the DIS Stock Transfer Order on July 21, 2005. The Order specifically verified the existence of the liens of AIC and Dr. Gerolimatos and determined that their interest in the DIS stock was superior to the interest of the Debtor. The Debtor participated in that litigation and this Court is bound by that decision based on the Rooker–Feldman Doctrine, which mandates the acceptance and binding effect of an order or judgment entered by a court of competent jurisdiction. As stated by the Supreme Court in the case of *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) "lower federal courts possess no power whatever to sit in direct review of state court decisions."

In sum, this Court is satisfied (1) that the transfer and fixing of a lien on the DIS stock was fixed outside of the preference period; (2) the same could not be avoided as an insider preference; and (3) the respective rights and status of the competing claims have been conclusively determined in favor of the Judgment Creditors, AIC and Dr. Gerolimatos.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Advanced Imaging Center of Northern Illinois Limited Partnership (Doc. No. 5) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED the Motion for Summary Judgment filed by Spiro Gerolimatos, M.D. (Doc. No. 6) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED the Cross Motion for Summary Judgment filed by the Debtor (Doc. No. 9) be and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that all claims asserted in the

Complaint in Counts I, II, III, IV, V, VI shall be dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that a separate final judgment shall be entered in accordance with the foregoing.